659 So.2d 242 (1995)
Guy R. GAMBLE, Appellant, Cross-Appellee,
v.
STATE of Florida, Appellee, Cross-Appellant.
No. 82334.
Supreme Court of Florida.
May 25, 1995.
Rehearing Denied August 23, 1995.
*243 James B. Gibson, Public Defender and Michael S. Becker, Asst. Public Defender, Daytona Beach, for appellant, cross-appellee.
Robert A. Butterworth, Atty. Gen., and Dan Haun and Kenneth S. Nunnelley, Asst. Attys. Gen., Daytona Beach, for appellee, cross-appellant.
SHAW, Justice.
Guy R. Gamble appeals his sentence of death for the first-degree murder of Helmut Kuehl. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm Gamble's conviction and sentence.
*244 On December 10, 1991, Guy R. Gamble and Michael Love murdered their landlord, Helmut Kuehl, by striking him several times in the head with a claw hammer and choking him with a cord.[1] Gamble and Love also stole their victim's car and wallet. Within the wallet was a blank check which Gamble forged and cashed in the amount of $8,544. After cashing the check the men, accompanied by their girlfriends, drove to Mississippi in the stolen car. Gamble subsequently abandoned the group, but was later arrested.
The jury found Gamble guilty of conspiracy to commit armed robbery, armed robbery, and murder in the first degree and recommended the death sentence by a ten-to-two vote. The trial court found in aggravation that the murder was cold, calculated, and premeditated and committed for pecuniary gain. Gamble's age (20) was a statutory mitigating factor. In non-statutory mitigation, the court gave substantial weight to Gamble's abused and neglected childhood and severe emotional problems; and some weight to his drug and alcohol use, remorsefulness and voluntary confessions, and Love's life sentence.[2] The court gave little weight to his status as a single parent, his family's testimony, and a desire for rehabilitation. Based upon its findings, the trial court sentenced Gamble to death. Gamble appeals this sentence and raises the following issues: (1) the trial court erroneously found that the crime was cold, calculated, and premeditated; (2) his death sentence is disproportionate, excessive, inappropriate, and imposed upon him cruel and unusual punishment; (3) the trial court erred in denying his special requested penalty phase jury instructions; and (4) the death penalty is unconstitutional. The State's cross-appeal asserts that the trial court erred in prohibiting the State from introducing in the penalty phase: (1) victim-impact evidence; (2) Donna Yenger's testimony;[3] and (3) redacted portions of Gamble's police statement. Issues raised in the State's cross-appeal are rendered moot by our affirmance of Gamble's death sentence.
Gamble's first issue is divided into two separate challenges. The first challenge asserts that the cold, calculated, and premeditated aggravating factor is inapplicable. We disagree. This aggravating factor is properly found when
the killing was the product of cool and calm reflection and not an act prompted by emotional frenzy, panic, or a fit of rage (cold), and that the defendant had a careful plan or prearranged design to commit murder before the fatal incident (calculated), and that the defendant exhibited heightened premeditation (premeditated), and that the defendant had no pretense of moral or legal justification.
Jackson v. State, 648 So.2d 85, 89 (Fla. 1994) (citations omitted). A chronological review of the facts indicates that approximately six days before the murder Gamble told his girlfriend that he was going to "take-out" Kuehl. The day before the murder he instructed his girlfriend to pack their belongings because they would be leaving town. He also had her sit at a table pretending to write a rent receipt, whereupon he would sneak up behind her and practice choking her with a cord. The day of the murder Gamble picked up his final paycheck and returned home, where he and Love gathered money to use as a guise for rent payment. They approached Kuehl, who was sitting in his garage, engaged him in conversation, and asked for a rent receipt. When Kuehl went to his apartment to obtain the receipt, Love searched the garage for a weapon, found a claw hammer, *245 and placed it on a counter.[4] When Kuehl returned to the garage, Gamble picked up the claw hammer and struck Kuehl in the head with such force that Kuehl fell to the floor. Gamble then got on top of Kuehl, held him down, and instructed Love to shut the garage doors. After shutting the doors, Love took the claw hammer and preceded to repeatedly strike Kuehl in the head. After the hitting ceased, Love wrapped a cord around Kuehl's neck and began choking him. Gamble stated that there was no reason to choke their victim and urged that they just leave him. Gamble then wrapped the hammer and cord in newspaper and left them lying on the floor. After cleansing themselves of their victim's blood, Gamble and Love stole Kuehl's car, picked up their girlfriends, went to Kentucky Fried Chicken, forged and cashed a check on Kuehl's account, and left town. These facts, which speak for themselves, completely support the trial court's finding of cold, calculated, and premeditated.
The second challenge asserts that the jury recommendation of death is unreliable due to inadequate jury instruction on the cold, calculated, and premeditated factor. The instruction stated:
The crime for which the defendant is to be sentenced was committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification.
In Jackson, this Court found that the above instruction suffered from a "constitutional infirmity" but, in so doing we stated that "[c]laims that the instruction on the cold, calculated, and premeditated aggravator is unconstitutionally vague are procedurally barred unless a specific objection is made at trial and pursued on appeal." 648 So.2d at 90. Gamble asserts that his objection was essentially an objection to the trial court's instruction on cold, calculated and premeditated. We disagree. The record clearly shows that Gamble's objection was premised on his belief that the evidence was insufficient to prove premeditation. Since Gamble failed to raise the objection he now asserts, we find that this issue is procedurally barred.
Gamble asserts that his sentence of death is disproportionate since his murdering of Kuehl is not the most aggravated and unmitigated of crimes. We find this assertion meritless. In Dougan v. State, 595 So.2d 1, 4 (Fla.), cert. denied, ___ U.S. ___, 113 S.Ct. 383, 121 L.Ed.2d 293 (1992) we stated that:
Under subsection 921.141(2) death may be the appropriate recommendation if, and only if, at least one statutory aggravating factor is established. After an aggravator has been established, any mitigating circumstances established by the evidence must be weighed against the aggravator(s). Florida's death penalty statute, and the instructions and recommendation forms based on it, set out a clear and objective standard for channeling the jury's discretion.
The trial court found two aggravating factors (cold, calculated, and premeditated and pecuniary gain), one statutory mitigating factor (age), and several non-statutory mitigating factors, most of which were given little weight. One of the non-statutory mitigating factors given "some" weight was Love's sentence of life. Gamble asserts that his jury would have also recommended a life sentence if it had been informed of Love's sentence. Gamble proffers that this factor singlehandedly requires a sentence reduction. We disagree. Love's sentence was based on a guilty plea entered after Gamble's penalty phase proceedings. Clearly the Gamble trial judge was not required to postpone Gamble's sentencing and await Love's plea and sentence. We refuse to speculate as to what may have occurred had the Gamble jury been made aware of the posture of Love's case. We find no error relative to the issue. We have also reviewed the sentencing order and find that the trial court properly considered and weighed the aggravating and mitigating factors. See Ferrell v. State, 653 So.2d 367 (Fla. 1995). We find Gamble's sentence of death proportionate in light of our previous opinions, our review of the sentencing order, and the instant facts.
*246 Gamble's third issue asserts that the standard jury instructions fail to: (1) inform the jury that even if an aggravating circumstance is proven beyond a reasonable doubt, they may still recommend life imprisonment; (2) adequately define mitigating circumstances; and (3) inform the jury that it could find mental impairment even if it failed to conclude that such impairment was extreme. This Court has repeatedly upheld the validity of the standard jury instructions. See Walls v. State, 641 So.2d 381, 389 (Fla. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 943, 130 L.Ed.2d 887 (1995); Robinson v. State, 574 So.2d 108, 111 (Fla.), cert. denied, 502 U.S. 841, 112 S.Ct. 131, 116 L.Ed.2d 99 (1991); Lara v. State, 464 So.2d 1173, 1179 (Fla. 1985). Accordingly, we find no error in the trial court's denial of Gamble's requested instructions.
We also find no merit in Gamble's final issue that Florida's death penalty statute, section 921.141, Florida Statutes (1993), is unconstitutional. The constitutionality of Florida's death statute has been continuously upheld. See Thompson v. State, 619 So.2d 261, 267 (Fla.), cert. denied, ___ U.S. ___, 114 S.Ct. 445, 126 L.Ed.2d 378 (1993).
Based on the foregoing, we affirm Gamble's convictions for first-degree murder and other crimes and his sentence of death.
It is so ordered.
GRIMES, C.J., and OVERTON, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] The official cause of death was blunt head injury due to multiple blows to the head, with a neck injury as a contributing factor.
[2] Love plead guilty to conspiracy to commit armed robbery, armed robbery, and first-degree murder. He was sentenced to fifteen years for the conspiracy and life for the armed robbery and murder.
[3] The State asserts that Donna Yenger's proffered testimony is admissible penalty phase hearsay. Yenger, Love's girlfriend, would have testified that during a conversation between Gamble, Love and herself, Love stated that "Well, Guy hit the victim over the head. He didn't go down and so he hit him again and he hit him again... . [A] pulse was still detected, at which point Guy got a rope and then choked the man to make sure he was dead."
[4] Before entering the garage, Gamble and Love had discussed the need for securing an alternate weapon in case Gamble was unable to get the cord around Kuchl's neck.