877 So.2d 706 (2004)
Guy Richard GAMBLE, Appellant,
v.
STATE of Florida, Appellee.
Guy Richard Gamble, Petitioner,
v.
James V. Crosby, Jr., Secretary, Department of Corrections, State of Florida, Respondent.
Nos. SC02-195, SC02-1948.
Supreme Court of Florida.
May 6, 2004.
Rehearing Denied June 25, 2004.
*709 Robert T. Strain, Assistant CCRC, and Frank Lester Adams, III, Assistant CCRC, Capital Collateral Regional Counsel  Middle Region, Tampa, FL, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General, and Kenneth S. Nunnelley, Senior Assistant Attorney General, Daytona Beach, FL, for Appellee/Respondent.
PER CURIAM.
Guy Richard Gamble (Gamble), currently incarcerated under a sentence of death, appeals an order of the trial court denying a motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850. He also petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons more fully explained below, we affirm the trial court's denial of post-conviction relief and deny habeas relief.

FACTS
The facts taken from this Court's opinion in Gamble's direct appeal are as follows:
On December 10, 1991, Guy R. Gamble and Michael Love murdered their landlord, Helmut Kuehl, by striking him several times in the head with a claw hammer and choking him with a cord. Gamble and Love also stole their victim's car and wallet. Within the wallet was a blank check which Gamble forged and cashed in the amount of $8,544. After cashing the check the men, accompanied by their girlfriends, drove to Mississippi in the stolen car. Gamble subsequently abandoned the group, but was later arrested.
Gamble v. State, 659 So.2d 242, 244 (Fla.1995) (footnote omitted). Gamble was tried in June 1993 and the jury found him guilty of conspiracy to commit armed robbery, armed robbery, and first-degree murder. On the first-degree murder conviction, the jury recommended a sentence of death by a vote of ten to two. The trial court accepted the jury's recommendation and sentenced Gamble to death. The trial court also sentenced Gamble to a consecutive life sentence for armed robbery, and a *710 consecutive fifteen-year prison term for conspiracy to commit armed robbery. On May 25, 1995, this Court affirmed Gamble's sentence and conviction. See Gamble v. State, 659 So.2d 242 (Fla.1995). Gamble's petition for writ of certiorari to the United States Supreme Court was denied in February 1996. See Gamble v. Florida, 516 U.S. 1122, 116 S.Ct. 933, 133 L.Ed.2d 860 (1996).
In 1997, Gamble filed a motion to vacate the judgment and sentence. He filed an amended motion to vacate in 1999, and a supplement in 2000, adding two additional claims.
The claims raised in Gamble's 3.850 motion are restated as follows: (1) whether Gamble was denied effective assistance of counsel when his attorney made concessions of guilt in opening statements; (2) whether Gamble was denied effective assistance of counsel in the penalty phase because his trial counsel did not present evidence from a mental health expert that Gamble suffered from frontal lobe damage and fetal alcohol syndrome; (3) whether trial counsel was deficient in not presenting any evidence of frontal lobe damage or fetal alcohol syndrome and deficient for presenting insufficient evidence of substance abuse; (4) whether the sentence was unreliable because insufficient evidence of substance abuse was presented; (5) whether there is newly discovered evidence of frontal lobe impairment and fetal alcohol syndrome to support a defense of insanity; (6) whether Florida's capital sentencing scheme is constitutional because using the electric chair is cruel and unusual punishment; (7) whether the cold, calculated, and premeditated aggravating factor is unconstitutionally vague; (8) whether the trial court committed fundamental error in instructing the jury on the pecuniary gain aggravator; (9) whether the trial court committed fundamental error when it denied a request to change venue; (10) whether the procedural and substantive errors, when viewed as a whole, deprived Gamble of his right to a fair trial; (11) whether Gamble was prejudiced by trial counsel's penalty phase closing argument during which counsel conceded the existence of the pecuniary gain aggravating factor; and (12) whether Gamble was denied effective assistance of counsel because lead counsel had little prior capital case experience and second-chair counsel did not have adequate time to prepare.
The trial court held a hearing pursuant to Huff v. State, 622 So.2d 982 (Fla.1993), granted an evidentiary hearing on claims 1 through 5, and 11 and 12, and summarily denied claims 6 through 10. After the evidentiary hearing, the court denied relief on all claims. Gamble now appeals. He raises four issues for our review: (1) whether trial counsel was ineffective for failing to challenge as unconstitutionally vague the aggravator of cold, calculated, and premeditated (CCP); (2) whether trial counsel committed error under Nixon v. Singletary, 758 So.2d 618 (Fla.2000), and United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), in opening statement; (3) whether trial counsel committed a Nixon/Cronic error in closing argument during the penalty phase; and (4) whether trial counsel was ineffective due to inexperience and inadequate preparation for trial.
Gamble also petitions this Court for a writ of habeas corpus. The habeas petition raises the following four claims: (1) whether the trial court conducted a proper hearing pursuant to Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973), and Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and whether appellate counsel was ineffective for failing to raise this claim on direct appeal; (2) whether the death sentence is unconstitutional *711 under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); (3) whether appellate counsel was ineffective for failing to raise the issue that trial counsel's decision to sever Gamble's trial from his codefendant's trial prevented the jury from learning of the codefendant's culpability and disparate sentence; and (4) whether it would be cruel and unusual punishment to execute Gamble as he may be incompetent at the time of his execution.
We address each of Gamble's claims below.

MOTION FOR POST-CONVICTION RELIEF

CCP Aggravator
Gamble first argues that the trial court erred in summarily denying his claim that trial counsel was ineffective for failing to renew a challenge to the CCP aggravating circumstance as unconstitutionally vague. On direct appeal, Gamble challenged the standard jury instruction on the CCP aggravator because a year after Gamble's trial this Court held that the instruction on the CCP aggravator provided insufficient guidance for the jury. See Jackson v. State, 648 So.2d 85 (Fla.1994). We denied relief on Gamble's claim as procedurally barred because Gamble's trial counsel failed to appropriately object to the instruction. See Gamble v. State, 659 So.2d 242, 245 (Fla.1995). In Gamble's motion for post-conviction relief, he argued that trial counsel's failure to appropriately object to the CCP instruction constituted ineffective assistance of counsel. The trial court summarily denied Gamble's post-conviction claim and found that, as a matter of law, counsel cannot be ineffective for failing to predict the evolution of case law. Gamble also argued that the CCP instruction was inapplicable to this case. The trial court denied relief on this claim as well, finding that the issue had been raised on direct appeal and was procedurally barred.
Gamble argues here that trial counsel's failure to preserve an objection to the CCP aggravating factor constitutes ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Pursuant to Strickland, Gamble bears the burden of showing that the lawyer's performance was deficient and that there is a reasonable probability that the deficient performance affected the outcome at trial. See id."A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052. Accepting Gamble's factual allegations as true, we conclude that Gamble's counsel was not ineffective for failing to object to the CCP aggravating circumstance.
When this Court held that the standard CCP jury instruction was unconstitutionally vague, it also stated that in order to assert such a claim, a specific objection must be made at trial and raised again on appeal. See Jackson, 648 So.2d at 90. This Court later specified that "[t]o preserve the error for appellate review, it is necessary both to make a specific objection or request an alternative instruction at trial, and to raise the issue on appeal." Walls v. State, 641 So.2d 381 (Fla.1994). In 1997, this Court reiterated that to preserve a claim that a CCP instruction is unconstitutionally vague, the objection "must attack the instruction itself, either by submitting a limiting instruction or making an objection to the instruction as worded." Pope v. State, 702 So.2d 221, 223 (Fla.1997).
*712 In this case, the issue was not properly preserved because trial counsel did not specifically object to the instruction as worded, nor did he submit an alternative instruction. Gamble argues, however, that trial counsel's failure to specifically object amounted to ineffective assistance of counsel since his trial counsel clearly was aware that such a claim could be made, and actually was made, in pretrial motions.
At the time of Gamble's trial the CCP instruction that was given was a valid instruction. Therefore, even if defense counsel had made the proper objections, the trial court would have acted appropriately in overruling any objection. Defense counsel cannot be deemed ineffective for failing to object to a standard jury instruction that had not been invalidated at the time of the defendant's sentencing. See Thompson v. State, 759 So.2d 650, 665 (Fla.2000) ("[T]rial counsel's failure to object to standard jury instructions that have not been invalidated by this Court does not render counsel's performance deficient."); see also Downs v. State, 740 So.2d 506, 517 (Fla.1999).
In Downs, the defendant's post-conviction counsel raised the same claim Gamble raises here. Downs was convicted of first-degree murder in 1977, and his conviction and sentence of death were affirmed on direct appeal in 1980. In his 1999 post-conviction proceeding, Downs contested the jury instruction on the CCP aggravator, arguing that the instruction was unconstitutionally vague. This Court held that the challenge was procedurally barred because trial counsel did not challenge the instructions at trial or on direct appeal, both of which were required. See Downs, 740 So.2d at 517. As Gamble does in this case, Downs then claimed that the failure to preserve the issue for review amounted to ineffective assistance of counsel. This Court denied Downs' claim, holding that, "[a]t the time of Downs' resentencing, the trial court used the standard jury instructions, which had been approved by this Court. Thus, trial counsel cannot be deemed ineffective under the standards set forth in Strickland for not objecting to the constitutional validity of these instructions." Id. at 517-18 (citations omitted). Gamble was tried in June 1993, a year before this Court struck the CCP jury instruction. Thus, at the time of Gamble's trial, the standard CCP instruction was still valid. Counsel's failure to properly object to the instruction did not, therefore, constitute deficient performance.
Furthermore, the application of the CCP aggravator pursuant to the standard set forth in Jackson was considered on direct appeal. This Court found that under the Jackson standard, "[the] facts, which speak for themselves, completely support the trial court's finding of cold, calculated, and premeditated." Gamble v. State, 659 So.2d 242, 245 (Fla.1995). Therefore, any claim based on the merits of the application of the CCP aggravator to this case is procedurally barred. See, e.g., Gaskin v. State, 737 So.2d 509, 513 n. 6 (Fla.1999) (holding that an issue is procedurally barred in post-conviction proceedings when it has been raised and considered in a prior proceeding); see also Teffeteller v. Dugger, 734 So.2d 1009, 1027 (Fla.1999) ("[A]llegations of ineffective assistance of counsel cannot be used to circumvent the rule that post-conviction proceedings cannot serve as a second appeal.").
For the foregoing reasons, we affirm the denial of post-conviction relief on this claim.[1]

*713 Nixon/Cronic at Opening Statement
Gamble next claims that the trial court erred in denying relief on his claim that defense counsel conceded guilt to first-degree murder at trial without his knowledge or consent. In his opening statement to the jury, Gamble's trial counsel argued that at the time of the killing Gamble did not actually intend to kill his landlord, but that he did "perpetrate an act imminently dangerous to another evincing a depraved mind regardless of human life but without a premeditated design to kill." During his closing argument, defense counsel told the jury that they "would conclude that Mr. Gamble [was] guilty of second or third degree murder but not first degree murder." The court below concluded that trial counsel did not concede guilt to the crime charged, and that Gamble agreed to the strategy counsel utilized.
This case is one where the defense was faced with significant evidence of the defendant's participation in the criminal episode that resulted in the victim's death. Just after Gamble was arrested, he gave a statement to police, saying that he and his codefendant Mike Love hit the victim with a hammer, and that after the victim went down, Love took the victim's keys and wallet and gave them to Gamble. Defense counsel moved to suppress the statement, arguing that it was not made voluntarily. However, Gamble refused to testify at the suppression hearing and counsel was forced to withdraw the motion. Thus, the confession was available to the State for use at trial. In addition to the confession, Gamble's girlfriend testified that Gamble planned to "take out" the victim, and that the night before the murder, Gamble practiced strangulation on her using a cord from the window blind. The State also introduced evidence that Gamble's clothes were stained with the victim's blood.
At trial, defense counsel relied on the theory of second- or third-degree murder. He attempted to argue that Gamble had no intention of being involved in a murder. He argued that Mike Love initiated the killing and it caught Gamble off guard. Defense counsel was willing to admit that, although Gamble had no intent to kill the victim, after the death, he did participate in the theft. When asked at the evidentiary hearing how such a theory could be viable with all the evidence that the murder and robbery were planned ahead of time, trial counsel answered that the evidence, as it was, had to be dealt with. He attempted to show the jury that what had actually occurred is not what Gamble had planned. He argued to the jury that Gamble had been taken by surprise when Love hit the victim with a hammer. He wanted to convince the jury that at the time Gamble and Love approached their landlord, Gamble had no intent to kill him or rob him. Gamble's trial counsel stated that he chose to make certain concessions in his opening statement because he thought it was important to show that Gamble was responsible to a certain extent and should be punished to some degree, but that Gamble did not commit first-degree murder and should not get the death penalty. Thus, the issue to be decided is whether Gamble's trial counsel's performance was deficient when he decided to tell the jury in his opening statement that Gamble was guilty of a lesser included offense.
As we said in Atwater v. State, 788 So.2d 223 (Fla.2001),

*714 Not all decisions of counsel are reviewable under Strickland as constituting ineffective assistance of counsel. "[A]ny specific discretionary or judgmental act or position of trial counsel, whether tactical or strategic, on an inquiry as to effectiveness of counsel" will not be considered under Strickland. McNeal v. State, 409 So.2d 528, 529 (Fla. 5th DCA 1982). Sometimes concession of guilt to some of the prosecutor's claims is good trial strategy and within defense counsel's discretion in order to gain credibility and acceptance of the jury.
When faced with the duty of attempting to avoid the consequences of overwhelming evidence of the commission of an atrocious crime, such as a deliberate, considered killing without the remotest legal justification or excuse, it is commonly considered a good trial strategy for a defense counsel to make some halfway concessions to the truth in order to give the appearance of reasonableness and candor and to thereby gain credibility and jury acceptance of some more important position.

Id. at 529.
Atwater, 788 So.2d at 230.
In his opening statement, defense counsel told the jury that although Gamble was involved, he did not kill the victim or intend to kill the victim. Counsel told the jury that Mike Love actually did the killing and took the victim's wallet and money. Since this rendition of the facts did not contradict the confession Gamble made, it was a viable alternative theory to the State's position. Gamble's post-conviction claim offers no real alternative theory for the defense, except to question trial counsel's decision to present an opening statement. To that alternative, trial counsel responded that he always realizes he has the option of not making an opening statement, but he generally does not waive opening statement because the jury would then hear only the State's theory and the defendant would have no opportunity to rebut any of the State's arguments. Thus, it was a strategic decision to make a defense opening statement. "[S]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000); accord Shere v. State, 742 So.2d 215, 220 (Fla.1999); State v. Bolender, 503 So.2d 1247, 1250 (Fla.1987). The evidence in this case demonstrates that trial counsel considered and rejected alternative courses; his decision to proceed in the manner chosen was a strategic one and does not amount to ineffective assistance.
Moreover, if the defendant consents to counsel's strategy, there is no merit to a claim of ineffective assistance of counsel. See Nixon v. Singletary, 758 So.2d 618, 623 (Fla.2000). At the post-conviction hearing, trial counsel was asked whether he discussed his trial strategy with Gamble. Counsel stated that either he or co-counsel discussed strategy with Gamble and explained to him that, in their opinion, in order to maintain credibility with the jury they had to argue that Gamble's conduct amounted to second- or third-degree murder. Defense counsel testified that Gamble agreed to proceed as counsel thought necessary. Gamble also testified at the post-conviction hearing. Although Gamble stated that he did not agree to the exact opening statement, he admitted that it was possible that he discussed with his attorneys the strategy to concede second- or third-degree murder and that "as far as [he] understood it," it was okay with him.
*715 Gamble now argues that trial counsel's concessions amounted to a concession of felony murder and that he did not understand this at the time he agreed to the strategy. Gamble also argues that he could not have consented if he did not understand the effect this concession would have on his case. Essentially, Gamble argues that he would not have consented if he had understood that the strategy was flawed. Strickland stresses that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S.Ct. 2052; see also Cherry v. State, 659 So.2d 1069, 1073 (Fla.1995). Both Gamble and trial counsel had the same understanding of the trial strategy employed. Gamble cannot argue in post-conviction that his consent is now invalid because he did not understand the consequences of his consent if the strategy did not result in an acquittal of first-degree murder.
Gamble testified at the post-conviction hearing that he was aware of counsel's trial strategy and was "okay with" conceding to second- or third-degree murder. The trial court relied on this testimony and specifically found:
On cross examination, Defendant stated that he had indeed given his consent to the strategy of admitting to second or third degree murder. (Hr'g Tr. at 120-21). Defendant, himself, maintained no hopes of going free and was even prepared, had the Office of the State Attorney been willing, to plea to a life sentence. Id.

Gamble confirmed at the evidentiary hearing that he was aware of and consented to the trial strategy employed by defense counsel. Thus, there is competent, substantial evidence in the post-conviction record to support the trial court's finding that Gamble agreed to concede certain facts at trial.
Gamble has failed to demonstrate ineffective assistance of counsel based on this claim.

Nixon/Cronic in Closing Arguments at Sentencing
Gamble next argues that the penalty phase concessions made by counsel that contradict guilt phase arguments are entitled to the per se ineffectiveness of counsel analysis of Nixon and Cronic. The trial court held that Nixon does not apply to concessions made in the penalty phase trial since guilt is no longer at issue. The court concluded that "it would have been preposterous for the defense attorney to argue in the penalty phase that pecuniary gain was not proven when only one day before, a unanimous jury had found that the evidence proved beyond a reasonable doubt that the defendant had committed armed robbery of the victim."
Recently, we held that defense counsel is not ineffective for conceding an aggravating circumstance in a penalty phase trial when the facts of the aggravating circumstance were proven in the guilt phase trial. See Schwab v. State, 814 So.2d 402 (Fla.2002). In Schwab, the defendant argued that trial counsel was ineffective for stipulating to the aggravator of a murder during a commission of an enumerated felony. However, the defendant had just been convicted of sexual battery of a child and kidnapping. We held that, "[g]iven these concurrent felony convictions, counsel was not ineffective for acknowledging this fact." Schwab, 814 So.2d at 413; see also Patton v. State, 784 So.2d 380, 390 (Fla.2000) (finding facts counsel conceded were supported by the overwhelming evidence and, even if counsel had denied these facts, *716 there was no reasonable possibility jury would have rendered different verdict).
As in Schwab, the jury in this case had just found Gamble guilty of crimes that served as the factual basis for the concessions made by counsel in the penalty phase trial. Gamble was found guilty of conspiracy to commit armed robbery, armed robbery, and murder in the first degree. The trial court was correct that "it would have been preposterous" for penalty-phase defense counsel to argue that no facts in the record established pecuniary gain when the jury found, beyond a reasonable doubt, that they did. Nixon addresses a situation where an attorney concedes facts in opening statement that have not yet been adequately tested in an adversarial proceeding. Once the case reaches the penalty phase, certain facts have been tested in an adversarial proceeding and have been established beyond a reasonable doubt. Acknowledging those facts falls within the acceptable range of reasonable professional assistance. Because this is not a case where defense counsel conceded an aggravator that required proof of additional facts not established in the guilt-phase trial, Nixon has no application. Thus, we affirm the denial of post-conviction relief on this claim.

Inexperience or Inadequate Preparation
Finally, Gamble argues that trial counsel was deficient under Strickland because counsel was inexperienced, overburdened, and had inadequate time to prepare his case. Gamble argues that because of these issues, counsel conceded guilt to felony murder and conceded the pecuniary gain aggravator. Gamble argues further that although trial counsel testified that he regularly consulted with the chief assistant public defender on this case, the chief testified in a pretrial hearing that he only had a limited involvement with this case.
Ineffectiveness under Strickland requires more than just a showing that trial counsel was inexperienced or overworked. Gamble must demonstrate with specificity "that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. Even if a defendant meets that threshold, he or she must also prove that such an error prejudiced the defense. Id.
Gamble claims that trial counsel conceded guilt and conceded an aggravating circumstance, and these concessions amount to ineffectiveness under Strickland. As discussed above, the concessions do not meet the test for ineffective assistance of counsel. In Gamble's other allegation of ineffective assistance, that trial counsel exaggerated about the chief assistant's involvement, he attacks trial counsel's credibility. Even assuming Gamble's claim is true, he does not demonstrate how this rendered trial counsel's performance deficient or how it caused prejudice.
The general accusation that trial counsel was inexperienced and overburdened likewise does not demonstrate deficient performance. On this issue, the trial court found that defense counsel had eight years of experience before he began working as a public defender and had done a substantial amount of criminal defense work before representing Gamble. The trial court also found that defense counsel's experience in trying other serious felonies adequately prepared him to hold the position of lead counsel in this trial. The trial court recounted all that trial counsel did in preparation for Gamble's trial, including counsel's travels to other states to interview witnesses, and consultations with other "veteran and highly experienced *717 attorneys in the Public Defender's Office."
In addition, trial counsel testified at the evidentiary hearing that there were many attorneys in his office at the time with whom he could discuss ideas and strategy, and that he received advice on his strategy in this case. Thus, the record supports the trial court's finding that trial counsel utilized the advice of more experienced counsel in formulating his theory of defense. The mere fact that trial counsel was not as experienced as other attorneys does not establish ineffectiveness.
For the reasons discussed above, we find that the trial court properly denied Gamble's motion for post-conviction relief.

PETITION FOR WRIT OF HABEAS CORPUS
Gamble also raises four claims in his petition for writ of habeas corpus. For the following reasons, we deny habeas relief.

Inquiry Under Nelson v. State

Gamble first alleges that a potential conflict of interest issue required the trial court to make an inquiry pursuant to Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973). He argues that because the court did not make that inquiry, Gamble did not know he had the right to represent himself. He states that had he known he could have represented himself, he might have requested to do so, and this request would have triggered the necessity for a hearing under Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Gamble also argues that to the extent this issue was not raised on direct appeal, appellate counsel was ineffective.
When a defendant seeks to discharge court-appointed counsel on the ground of incompetency, the court must determine whether there is reasonable cause to believe appointed counsel is not rendering effective assistance to the defendant. If there is reasonable cause to believe counsel is not rendering effective assistance, the court should discharge counsel and appoint substitute counsel. If the trial court finds that there is not reasonable cause to discharge counsel, the court should advise the defendant that if appointed counsel is discharged without cause, the defendant may be required to proceed to trial without court-appointed representation. See Nelson v. State, 274 So.2d at 258-59. A defendant may waive the right to court-appointed counsel and choose to proceed without counsel as long as the waiver is knowing and intelligent. See Faretta, 422 U.S. 806, 95 S.Ct. 2525. Thus, when a defendant alleges that court-appointed counsel is incompetent, the trial judge must first determine whether counsel is incompetent. If the trial judge determines counsel is not incompetent and the defendant still insists on discharging the attorney, under Nelson, the judge must inform the defendant that he or she may have to continue without representation. If the defendant decides to continue without representation, the dictates of Faretta are triggered, and the trial court must determine whether the defendant's decision is knowingly and intelligently made. The combined effect of Nelson and Faretta is to ensure that a defendant who chooses to proceed without counsel after waiving court-appointed counsel has done so knowingly and intelligently. See Knight v. State, 770 So.2d 663, 666 (Fla.2000).
Gamble never requested that his court-appointed counsel be discharged based on counsel's alleged incompetency. In fact, Gamble did not articulate any complaint with counsel's representation. Before trial, on two occasions, Gamble's counsel asked him to sign a waiver of potential *718 conflict based on personnel in the public defender's office who had personal relationships with personnel in the State Attorney's office and with codefendant Michael Love's attorney. Gamble testified that he did not believe there to be any conflict; however, he assumed that there must have been one, otherwise his attorney would not be seeking the waiver. He refused to sign the waiver form. At a pretrial hearing, Gamble's trial counsel explained to the judge that he drafted a consent and waiver form, that Gamble had reservations about signing it, and that Gamble told counsel that the form caused him to mistrust his attorney and the public defender's office. Counsel stated that Gamble then requested substitute counsel. Counsel told Gamble that he could make the motion to the judge himself. When Gamble appeared in court to move for new counsel, he told the court that he did not distrust his attorney, that he did not see a problem with any potential conflict, but that he felt there must be a conflict or else counsel would not be seeking a waiver. The judge asked Gamble if he knew of anything his attorney had done that was inappropriate or improper in his representation. Gamble replied that he did not. Gamble told the judge that his request for new counsel was based on his feeling that there was a potential conflict.
The court then questioned Gamble's defense counsel, codefendant's counsel Michael Graves and Michelle Morley, the Chief Assistant Public Defender Michael Johnson, and Assistant Public Defender Hugh Lee. Each denied knowing of any improper or inappropriate exchanges of information among the attorneys, or any other reason for ending the Public Defender's participation in the case. After taking the testimony, the court found that there was no grounds for removal of Gamble's attorney and there was no evidence to support appointment of new counsel.
In order to establish an ineffectiveness claim premised on an alleged conflict of interest, the defendant must "establish that an actual conflict of interest adversely affected his lawyer's performance." Cuyler v. Sullivan, 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); see also Quince v. State, 732 So.2d 1059, 1065 (Fla.1999). A lawyer suffers from an actual conflict of interest when he or she "actively represent[s] conflicting interests." Cuyler, 446 U.S. at 350, 100 S.Ct. 1708. The defendant must therefore identify specific evidence in the record showing that his or her interests were compromised in order to demonstrate actual conflict. See Herring v. State, 730 So.2d 1264, 1267 (Fla.1998). A possible, speculative or merely hypothetical conflict is "insufficient to impugn a criminal conviction." Cuyler, 446 U.S. at 350, 100 S.Ct. 1708.
Because Gamble's only allegation was that there might be a conflict, and because Gamble was unable to identify any manner in which that suspected conflict affected his counsel's competency to represent him, the need for a Nelson inquiry was never triggered. See Gaines v. State, 706 So.2d 47, 49 (Fla. 5th DCA 1998) (holding that "[w]hile a conflict of interest may adversely effect [sic] an attorney's representation, the mere allegation of a conflict does not give rise to the necessity of conducting a Nelson inquiry"). Gamble's assertion that there was a potential for conflict falls short of demonstrating that a conflict existed, that counsel was incompetent, or that a Nelson hearing was required. In addition, no Faretta inquiry was necessary in this case because Gamble never asked to represent himself. See Teffeteller v. Dugger, 734 So.2d 1009, 1028 (Fla.1999) (holding that a defendant who does not make a request to represent himself is not entitled to a Faretta inquiry).
*719 We also find no merit in Gamble's assertion that appellate counsel was ineffective for failing to raise this issue on appeal. Although a habeas petition is the proper vehicle by which to raise claims of ineffective assistance of appellate counsel, Gamble's claim fails to demonstrate that appellate counsel's performance was deficient. See Suarez v. Dugger, 527 So.2d 190, 192-93 (Fla.1988) (holding that to demonstrate ineffectiveness of appellate counsel, the defendant must show that counsel's omissions constitute serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance, and that such deficiency undermined confidence in the result on appeal). Because the trial court did not err in failing to make a Nelson or Faretta inquiry, Gamble cannot demonstrate that failure of appellate counsel to raise this issue undermined confidence in the outcome of the appeal.

Validity of Death Sentence
The second issue Gamble raises in his habeas petition is that his sentence is invalid under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). He argues that the State failed to prove at least one aggravator, that the aggravators must be charged in the indictment, that there must be a unanimous jury verdict, and that the jury's mere "recommendation" of death fails to establish that the sentence was recommended beyond a reasonable doubt. The State counters that Gamble's Apprendi claim is procedurally barred, and has been determined invalid on its merits in Bottoson v. Moore, 833 So.2d 693 (Fla.) cert. denied, 537 U.S. 1070, 123 S.Ct. 662, 154 L.Ed.2d 564 (2002), and King v. Moore, 831 So.2d 143 (Fla.) cert. denied, 537 U.S. 1067, 123 S.Ct. 657, 154 L.Ed.2d 556 (2002).
As we have said in other cases, "Ring does not require either notice of the aggravating factors that the State will present at sentencing or a special verdict form indicating the aggravating factors found by the jury." Kormondy v. State, 845 So.2d 41, 54 (Fla.) (citing Bottoson and King) cert. denied, ___ U.S. ___, 124 S.Ct. 392, 157 L.Ed.2d 283 (2003). Moreover, in this case the defendant was found guilty by a jury of both first-degree murder and the felony of armed robbery. Thus, there was a statutory aggravator proven to the jury beyond a reasonable doubt. Therefore, Gamble's sentence is not invalid under Apprendi and Ring.
As for Gamble's claim that Florida's capital sentencing scheme is unconstitutional, this Court denied a similar claim for relief in Bottoson v. Moore, 833 So.2d 693 (Fla.2002).
Because the Apprendi and Ring issues have already been decided adversely to Gamble's position, relief on this claim is denied.

Codefendant's Case
Gamble claims that appellate counsel did not thoroughly argue that his sentence was disproportionate to his codefendant's sentence and that he could have made other arguments on appeal.[2] The disproportionality claim was presented on direct appeal and was rejected. See Gamble v. State, 659 So.2d 242, 245 (Fla.1995) (finding that it would be improper to speculate as to what might have occurred had *720 Gamble's jury been made aware of the posture of the codefendant's case). A habeas petition is not the proper vehicle to argue a variant of an already decided issue. See Jones v. Moore, 794 So.2d 579, 586 (Fla.2001); Thompson v. State, 759 So.2d 650, 657 n. 6 (Fla.2000). Thus, we deny habeas relief on this claim.

Competency to be Executed
As his final issue Gamble claims he is incompetent to be executed. As both parties assert, a claim of competency to be executed is not ripe for review until the governor signs a death warrant. See Fla. R.Crim. P. 3.811(c); Hunter v. State, 817 So.2d 786, 799 (Fla.2002) (finding that the defendant's claim that his execution would be unconstitutional because he may be incompetent at the time of execution was premature, and the claim could not legally be raised until after a death warrant is issued). No warrant has been signed at this time. Therefore, we deny relief on this claim.

CONCLUSION
For the reasons expressed above, we affirm the trial court's denial of post-conviction relief, and we deny habeas relief.
It is so ordered.
WELLS, PARIENTE, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
CANTERO, J., concurs specially with an opinion, in which WELLS and BELL, JJ., concur.
ANSTEAD, C.J., concurs in result only.
CANTERO, J., specially concurring.
I concur in the majority opinion. Moreover, regarding the petitioner's claim that Florida's capital sentencing scheme violates Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), I would hold, for the reasons stated in my specially concurring opinion in Windom v. State, Nos. SC01-2706 & SC02-2142, ___ So.2d ___, 2004 WL 1057640 (Fla. May 6, 2004), that Ring does not apply retroactively.
WELLS and BELL, JJ., concur.
NOTES
[1] Gamble also argues the trial court should have held an evidentiary hearing on this issue. However, this issue was properly summarily denied because the record conclusively demonstrates Gamble is not entitled to relief. See LeCroy v. Dugger, 727 So.2d 236, 239 (Fla.1998).
[2] Gamble also claims that trial counsel erred in moving to sever his case from the codefendant's. He acknowledges this issue is being presented to preserve his claim should there be a change of law in the future. See Sireci v. State, 773 So.2d 34, n. 14 (Fla.2000). Thus, we do not address this issue.