[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 31, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-14334

_____

D. C. Docket No. 04-00405-CV-WTH-GRJ

GUY RICHARD GAMBLE,

Petitioner-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
FLORIDA ATTORNEY GENERAL,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 31, 2006)

Before ANDERSON, BARKETT, and MARCUS, Circuit Judges.

BARKETT, Circuit Judge:

Guy Richard Gamble, a death-sentenced state prisoner, appeals the district

court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254. We review his petition on the two grounds specified in our Certificate of Appealability: (1) the trial court's failure to hold a *Faretta*[1] hearing after Gamble's alleged attempt to dismiss his counsel; and (2) Gamble's claim of ineffective assistance of counsel. The ineffective assistance claim is based on: (a) the failure of Gamble's counsel to raise the aforementioned *Faretta* issue on appeal; and (b) his trial counsel's contradiction, at the penalty phase, of facts argued by guilt-phase counsel. Gamble argues that such self-contradiction by the defense team destroyed credibility with the jury on an issue directly affecting his death sentence.[2]

The facts of Gamble's crime were succinctly described by the Florida Supreme Court as follows:

> Guy R. Gamble and Michael Love murdered their landlord, Helmut Kuehl, by striking him several times in the head with a claw hammer and choking him with a cord.
> . . .
> [A]pproximately six days before the murder[,] Gamble told his girlfriend that he was going to "take out" Kuehl. The day before the murder he instructed his girlfriend to pack their belongings because they would be leaving town. He also had her sit at a table pretending

---

[1] Faretta v. California, 422 U.S. 806, 807 (1975), held that a defendant in a state criminal trial has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so. The purpose of a *Faretta* hearing is to determine whether a defendant's decision to represent himself is, in fact, voluntary and intelligent.

[2] In light of the United States Supreme Court's holding in Florida v. Nixon, 543 U.S. 175 (2004), Gamble has abandoned certain other ineffective assistance claims based on concessions (regarding his participation in the murder) in guilt-phase counsel's opening statement.

2

to write a rent receipt, whereupon he would sneak up behind her and practice choking her with a cord. The day of the murder Gamble picked up his final paycheck and returned home, where he and Love gathered money to use as a guise for rent payment. They approached Kuehl, who was sitting in his garage, engaged him in conversation, and asked for a rent receipt. When Kuehl went to his apartment to obtain the receipt, Love searched the garage for a weapon, found a claw hammer, and placed it on a counter. Kuehl returned to the garage, Gamble picked up the claw hammer and struck Kuehl in the head with such force that Kuehl fell to the floor. Gamble then got on top of Kuehl, held him down, and instructed Love to shut the garage doors. After shutting the doors, Love took the claw hammer and proceeded to repeatedly strike Kuehl in the head. After the hitting ceased, Love wrapped a cord around Kuehl's neck and began choking him. Gamble stated that there was no reason to choke their victim and urged that they just leave him. Gamble then wrapped the hammer and cord in newspaper and left them lying on the floor. After cleansing themselves of their victim's blood, Gamble and Love stole Kuehl's car, picked up their girlfriends, . . . forged and cashed a check on Kuehl's account, and left town.

Gamble v. State, 659 So. 2d 242, 244-45 (Fla. 1995).

Based on these facts, the jury found Gamble guilty of murder in the first degree, armed robbery, and conspiracy to commit armed robbery. It recommended the death penalty by a ten-to-two vote, and the trial court followed this recommendation.

Gamble unsuccessfully appealed his murder conviction and death sentence to the Florida Supreme Court, see id., and the United States Supreme Court denied his petition for certiorari. Gamble v. Florida, 516 U.S. 1122 (1996). Gamble then returned to state court for collateral relief pursuant to Florida Rule of Criminal

3

Procedure 3.850. Nine of Gamble's claims were summarily dismissed and, after an evidentiary hearing, the court denied relief on the three remaining claims. This judgment was affirmed by the Florida Supreme Court in Gamble v. State, 877 So. 2d 706 (Fla. 2004). Gamble then filed this federal habeas petition, which was denied by the district court in Gamble v. Crosby, No. 504CV405OC10GRJ, 2005 WL 1618212 (M.D. Fla. July 5, 2005), as was his subsequent Notice of Appeal, which the district court properly treated as an Application for Certificate of Appealability. See Edwards v. United States, 114 F.3d 1083 (11th Cir. 1997). Gamble filed a formal Application for Certificate of Appealability, which this Court granted with respect to the two issues addressed here: the trial court's failure to hold a *Faretta* hearing and the allegedly ineffective assistance of Gamble's counsel.

We review *de novo* the district court's denial of habeas relief under 28 U.S.C. § 2254. Because the state court adjudicated Gamble's claims on the merits, § 2254(d)(2) withholds the writ unless the state court's conclusions were "contrary to," or involved an "unreasonable application of," federal law. A decision "contrary to" federal law contradicts the United States Supreme Court on a settled question of law or holds differently than did that Court on a set of materially indistinguishable facts – in short, it is a decision "substantially different from the

4

[Supreme Court's] relevant precedent." Williams v. Taylor, 529 U.S. 362, 405 (2000). A decision that unreasonably applies federal law identifies the correct governing legal principle as articulated by the United States Supreme Court, but unreasonably applies that principle to the facts of the petitioner's case, "unreasonably extends [the] principle . . . to a new context where it should not apply, or unreasonably refuses to extend [it] to a new context where it should apply." Id. at 407.

The Florida Supreme Court considered both of the issues presently before us. With regard to Gamble's *Faretta* claim, it held that "no *Faretta* inquiry was necessary in this case because Gamble never asked to represent himself." Gamble, 877 So. 2d at 718 (citing Tefeteller v. Dugger, 734 So. 2d 1009, 1028 (Fla. 1999)). The state Supreme Court also rejected Gamble's ineffective assistance claims. It held, first, that precisely because there was no need for a *Faretta* inquiry in the trial court, Gamble "cannot demonstrate that failure of appellate counsel to raise [the *Faretta*] issue undermined confidence in the outcome of the appeal." Id. at 719. Second, the Florida Supreme Court determined that "it would have been preposterous for penalty-phase defense counsel to argue that no facts in the record established pecuniary gain when the jury found, beyond a reasonable doubt, that it did. . . . [T]his is not a case where defense counsel conceded an aggravator that

5

required proof of additional facts not established in the guilt-phase trail . . . ." <u>Id.</u> at 716 (internal quotation marks omitted).

As to each of these issues, we address whether the Florida Supreme Court's determinations were "contrary to," or involved an "unreasonable application of," federal law.

## I. <u>Failure to Hold a *Faretta* Hearing</u>

Prior to trial, the court considered a potential conflict of interest issue regarding Gamble's continued representation by the Public Defender's Office. The record reflects the following exchange on this matter:

> THE COURT: Before we get started on all the motions, . . . I think there's an issue that needs to be addressed regarding the continued representing of the defendant, Mr. Gamble, by Mr. Nacke, and in particular, the Public Defender's Office; is that correct, Mr. Nacke?
>
> MR. NACKE: Yes, . . . I know the Court is aware of the situation. Our office and myself was instructed to go to my client with a Consent and Waiver Form to ask him to consent and waive a potential conflict because of a relationship between Michael Johnson and Michelle Morley. Michael Johnson being the Chief Assistant Public Defender of the Fifth Judicial Circuit in our office and Michelle Morley being one of the attorneys representing Mike Love. Based on that, and also the fact that Susan Graves who is employed as an Assistant Public Defender in the office of the Fifth Judicial Circuit, the Public Defender's Office, is the wife of Michael Graves, who is counsel for co-Defendant Michael Love. We were asked to notif[y] Mr. Gamble of that situation . . . and to ask him to sign a consent for us to continue representing him and to waive any potential conflict those relationships may create.

6

It has been our position from the outset of this request that, that there was no conflict, that there was no ethical duty for us to obtain this consent or waiver, . . . .  The potential itself is, is not a conflict [nor] an ethical violation. . . .

As instructed . . . I drafted a Consent and Waiver Form for Mr. Gamble to sign, took it over to him, and he had many reservations. He considered it for a couple of days, and he indicated to me that he did not want to sign it; that, you know, that has caused him to distrust me as his attorney and the office of the Public Defender's Office in representing him.  *He told me that he wanted to have substitute counsel, did not want us to represent him anymore.* I will let him, you know, make that motion himself, your Honor. . . .

THE COURT: [M]r. Gamble.

GAMBLE: At this time, your Honor, it's not so much that I distrust Mark as he said, I just feel that they brought me this potential conflict and I didn't – I don't see a problem with it but there, you know, I don't understand why it was brought to me if it wasn't a conflict, if it wasn't an ethical problem, you know. I didn't know about it beforehand, so, you know, I have a problem with signing it if, you know, if you can see fit to substitute counsel, you know.

THE COURT: Do you know of anything that your attorney has done that is inappropriate or improper on, on your behalf in representing you?

GAMBLE: Well, not anything that I could substantiate with law, you know. I've been to the law library here in Lake County and there's nothing that says that he's done anything legally or ethically wrong but . . .

THE COURT: Do you know of any improper exchange of confidential or privileged information by your attorney with anybody else in this case?

GAMBLE: No, I don't.

7

THE COURT: Is there any hint that that might have happened as far as you're concerned?

GAMBLE: Not – No, there's no hint that there was but I just, you know, all I can say is there's a potential of, you know, a relationship between the persons, you know, the situation things could be said at moments that, you know, normally wouldn't leave those two people but in the circumstances.

THE COURT: Okay. Anything else, sir?

GAMBLE: No.

After further testimony from counsel for Gamble and co-defendant Love, the court "[found] that there are no grounds for removal of your attorney, Mr. Gamble, . . . no evidence to support that [request], . . . and no grounds to appoint another counsel in this case."

In addition to agreeing with the trial court's substantive findings as to the necessity of removing and appointing counsel, Gamble, 877 So. 2d at 717-18, the Florida Supreme Court held that "no *Faretta* inquiry was necessary in this case because Gamble never asked to represent himself." Id. at 718 (citing Tefeteller v. Dugger, 734 So. 2d 1009, 1028 (Fla. 1999)). We cannot say that this determination was "contrary to," or was "an unreasonable application" of, Supreme Court precedent – including U.S. v. Faretta, 422 U.S. 806 (1974).

Faretta held that "a defendant in a state criminal trial has a constitutional right to proceed without counsel when he voluntarily and intelligenly elects to do

8

so." Id. at 807. Thus, in order for there to be a *Faretta* violation, the defendant must have indicated that he wishes to conduct his own defense. Gamble's statements to the trial court simply did not express this wish. Rather, Gamble submitted – at most – a conditional request: essentially, "I would like to discharge my counsel if the court will appoint a different one." Gamble points to no precedent from the United States Supreme Court supporting his contention that this request should have been treated as an invocation of his *Faretta* right, and he ignores that Court's strongly worded suggestion to the contrary.[3]

As the Florida Supreme Court recognized, a defendant's assertion of his desire to proceed without counsel is the starting-point for any federal *Faretta* claim: "If the defendant decides to continue without representation, the dictates of *Faretta* are triggered, and the trial court must determine whether the defendant's decision is knowingly and intelligently made." Gamble, 877 So. 2d at 717. In holding that Gamble did not ask to continue without representation, the state Supreme Court did not contradict or unreasonably apply United States Supreme Court precedent. Therefore Gamble's *Faretta* claim must fail.

## II. Ineffective Assistance of Counsel

---

[3] See Wheat v. United States, 486 U.S. 153, 159 n.3 (1988) ("Our holding in Faretta . . . that a criminal defendant has a Sixth Amendment right to represent *himself* if he voluntarily elects to do so, does not encompass the right to choose any advocate if the defendant wishes to be represented by counsel.") (emphasis in original).

A. Counsel's Failure to Raise *Faretta* Claim

Gamble argues that his counsel was unconstitutionally ineffective in failing to raise the *Faretta* issue just discussed.  To succeed on this claim, Gamble must show that his attorney's performance was deficient and that the deficiency was prejudicial.  See Strickland v. Washington, 466 U.S. 668, 687 (1984).  The Florida Supreme Court found neither element in the present case.  Because Gamble's substantive *Faretta* argument itself fails, the Court reasoned that Gamble "cannot demonstrate that failure of appellate counsel to raise [the] issue undermined confidence in the outcome of the appeal."  Gamble, 877 So. 2d 719.  We agree. This Court has no cause to question the Florida Supreme Court's determination that, under the state's own laws, Gamble never asked to represent himself.[4]  Nor does federal law require such an interpretation, for the reasons explained in the

---

[4] Of course,"in the context of a federal habeas proceeding," the independent and adequate state grounds doctrine has "excluded from consideration any questions of state *substantive* law . . . where questions of that sort are . . . *in themselves dispositive* of [a petitioner's] case." Wainwright v. Sykes, 433 U.S. 72, 81 (1977) (emphasis added).  Here, however, Gamble's alleged entitlement to a *Faretta* hearing under *state* law poses a question *antecedent* to his federal ineffective-assistance claim.  Thus the state law question is not *in itself* dispositive, making this is one of "a broad set of situations in which federal constitutional or statutory law [would] operate[] to protect an entitlement created primarily, if not exclusively, by state law." Fallon, Meltzer, & Shapiro, Hart and Weschler's The Federal Courts and the Federal System 540 (5th ed. 2003).  Though the application of these principles can be difficult, see generally id. at 527-40, they pose no problem here, as Gamble's state law claim was based on dicta in Hardwick v. State, 521 So. 2d 1071, 1074 (Fla. 1988).  Moreover, the Hardwick Court stressed that "vacillation on the question of self-representation has been held a sufficient grounds for denying the request," with courts "long requir[ing] that a request for self-representation be stated unequivocally."  Id. at 1074-75.

10

previous section. Therefore we do not find that the Florida Supreme Court's determination was "contrary to," or was "an unreasonable application" of, United States Supreme Court precedent – including Strickland.

B. Contradictory Statements by Guilt-Phase and Penalty-Phase Counsel

In the guilt phase of Gamble's trial, counsel proceeded on a theory of theft-after-the-killing – which is to say that, notwithstanding other admissions as to Gamble's guilt, counsel declined to concede a pecuniary-gain aggravator. In the penalty phase, however, where it was the State's responsibility to prove aggravating factors sufficient to impose the death penalty, second chair defense counsel (a different attorney than guilt-phase counsel) told the jury that "this murder . . was committed for financial gain, there's no question about that, it was a robbery. Guy Gamble was involved in that robbery. You have heard all the testimony." Counsel further stated that Gamble's involvement in the planning of the robbery "is not in dispute and never has been," and he conceded outright that an aggravator existed "because it was for financial gain. . . . [T]he evidence you have before you is of a heightened premeditation for robbery."

Reviewing this claim, the Florida Supreme Court held that "it would have been preposterous for penalty-phase defense counsel to argue that no facts in the record established pecuniary gain when the jury found, beyond a reasonable doubt,

11

that it did. . . . [T]his is not a case where defense counsel conceded an aggravator that required proof of additional facts not established in the guilt-phase trial . . . ." Id. at 716 (internal quotation marks omitted).  We do not find that this determination was "contrary to," or was "an unreasonable application" of, federal Supreme Court precedent – including Strickland.  Again, counsel is ineffective under Strickland if his performance is both deficient and prejudicial.  Even if contradictory statements might sometimes furnish a case for deficiency, see Florida v. Nixon, 543 U.S. 175, 191-92 (2004), in this case, as the Florida Supreme Court observed, the jury had already discounted guilt-phase counsel's theft-after-the-killing theory when sentencing-phase counsel conceded the pecuniary gain aggravator.  Such concession obviously could not have been prejudicial, nor could it have rendered counsel's performance deficient, as its content was beyond genuine dispute in the penalty phase.  Accordingly, the Florida Supreme Court's determination was neither "contrary to," nor "an unreasonable application" of, Supreme Court precedent.

**AFFIRMED.**