995 So.2d 329 (2008)
Steven Edward STEIN, Appellant,
v.
STATE of Florida, Appellee.
No. SC06-1505.
Supreme Court of Florida.
September 25, 2008.
Rehearing Denied November 19, 2008.
*331 Harry P. Brody and Jeffrey M. Hazen of Brody and Hazen, PA., Tallahassee, Florida, for Appellant.
Bill McCollum, Attorney General, and Charmaine M. Millsaps, Assistant Attorney General, Tallahassee, Florida, for Appellee.
PER CURIAM.
Steven Edward Stein appeals an order of the circuit court denying his motion for postconviction relief under Florida Rule of Criminal Procedure 3.851. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons explained below, we affirm the circuit court's decision denying relief.

PROCEEDINGS TO DATE
Stein and his codefendant, Marc Christmas, were both indicted for armed robbery and the murder of two supervisors of a Pizza Hut in Jacksonville. Stein v. State, 632 So.2d 1361, 1363 (Fla.1994); see also Christmas v. State, 632 So.2d 1368 (Fla. 1994). They were tried and convicted separately. Stein, 632 So.2d at 1363 n. 1. Stein was convicted of two counts of first-degree murder and one count of armed robbery. Id. at 1363. By a ten-to-two vote, the jury recommended that Stein be sentenced to death for each murder. Id. at 1364. On July 23, 1991, the trial judge sentenced Stein to death. The judge also sentenced Stein to life for the armed robbery. Id. In sentencing Stein to death, the court found:
[F]ive aggravating circumstances: (1) previous conviction for a violent felony based on the contemporaneous murders of the two victims; (2) the homicides occurred during the commission of a robbery; (3) the homicides were committed to avoid arrest; (4) the homicides were heinous, atrocious, or cruel; and (5) the homicides were cold, calculated, and premeditated. Additionally, the trial judge found one statutory mitigating *332 factorno significant history of prior criminal activity.
Id. Stein appealed his convictions and sentences raising nine issues for review.[1] This Court affirmed, holding that even though the trial court erred in finding that the murders were heinous, atrocious, or cruel ("HAC"), there was no reasonable possibility of a different result. Id. at 1367.
On November 15, 1995, Stein filed a postconviction motion, and later filed two amended postconviction motions. In Stein's second amended motion, he raised the following twelve claims: (1) ineffective assistance of counsel ("IAC") because counsel failed to investigate and present sufficient mitigating circumstances; (2) the codefendant's life sentence was newly discovered evidence; (3) an unsigned sentencing order discovered in the State's file and not in the defense's file indicated that the trial judge, Judge Wiggins, delegated his responsibility of drafting the sentencing order to the State; (4) IAC because trial counsel conceded Stein's guilt in the armed robbery charge without his consent; (5) IAC because counsel failed to present an intoxication defense; (6) the prosecutor made inflammatory and improper comments and argument; (7) Florida's death sentencing scheme is unconstitutional; (8) the cold, calculated, and premeditated aggravating factor is unconstitutionally vague; (9) the trial court erred in instructing the jury on the HAC aggravator because this factor was overturned on direct appeal; (10) the rules prohibiting Stein from interviewing jurors is unconstitutional; (11) Stein's sentencing jury was misled by comments, questions, and instructions that diluted the jury's responsibility in sentencing; and (12) cumulative errors deprived Stein of a fair trial. On August 21, 2002, after holding a hearing in accordance with Huff v. State, 622 So.2d 982 (Fla. 1993), the trial court found that an evidentiary hearing was necessary on claims I-V of Stein's second amended motion.
On September 9, 2002, Stein filed a motion to disqualify Judge Wiggins, the trial judge, from presiding over his postconviction proceedings. Stein asserted that Judge Wiggins had become a material witness in the matter because he would have to testify to explain how an unsigned sentencing order came to be in the State's files.[2] On October 3, 2002, Judge Wiggins found that Stein's motion to disqualify was "legally insufficient pursuant to Florida Rule of Judicial Administration 2.160(E) and is also conclusory in nature." However, Judge Wiggins granted Stein's motion *333 for disqualification for the limited purpose of permitting a further inquiry and evidentiary hearing into the sentencing order issue, and he retained jurisdiction to decide Stein's other claims. Chief Judge Moran of the Fourth Judicial Circuit assigned himself to the limited sentencing order issue and held an evidentiary hearing on October 18, 2002. At the hearing, five witnesses, including Judge Wiggins and the two assistant state attorneys who prosecuted Stein, testified. Based upon the evidence presented, Chief Judge Moran denied Stein's claim on the sentencing order on October 30, 2002.[3] The case was then returned to Judge Wiggins who held an evidentiary hearing on February 13 and 14, 2006. He denied all claims on May 2, 2006. This appeal follows.
Stein raises four issues for review. First, Stein argues that Judge Wiggins erred in not granting his motion for judicial disqualification. Second, Stein argues that trial counsel was ineffective at trial for conceding guilt on the robbery charge to the jury where the felony-murder rule applied to his capital charges. Third, Stein argues that counsel was ineffective for failing to investigate and present certain witnesses as mitigation evidence. Fourth, Stein argues that his codefendant's life sentence is newly discovered evidence entitling him to a reconsideration of his death sentence.

JUDICIAL DISQUALIFICATION
In Stein's first claim he alleges that Judge Wiggins erred in not granting his motion for disqualification. However, he does not challenge Chief Judge Moran's resolution of the underlying issue concerning the presence of the unsigned sentencing order in the prosecutor's file. Stein argues on appeal that Judge Wiggins was a material witness to the claim that Judge Wiggins may have delegated his authority in drafting the sentencing order to the State because of the presence of the unsigned sentencing order in the State's file.
A motion to disqualify is governed substantively by section 38.02, Florida Statutes (2002), which provides in relevant part:
In any cause in any of the courts of this state any party to said cause ... may at any time before final judgment... show by a suggestion filed in the cause that the judge before whom the cause is pending ... is a material witness for or against one of the parties to said cause....
Id. A motion to disqualify is governed procedurally by Florida Rule of Judicial Administration 2.330 (former rule 2.160), which provides in relevant part:
(d) Grounds. A motion to disqualify shall show:
(1) that the party fears that he or she will not receive a fair trial or hearing because of specifically described prejudice or bias of the judge; or
(2) that the judge before whom the case is pending, or some person related to said judge by consanguinity or affinity within the third degree, is a party thereto or is interested in the result thereof, or that said judge is related to an attorney or counselor of record in the *334 cause by consanguinity or affinity within the third degree, or that said judge is a material witness for or against one of the parties to the cause.
Id. The standard of review of a trial judge's determination on a motion to disqualify is de novo. Gore v. State, 964 So.2d 1257, 1268 (Fla.2007). Whether the motion is legally sufficient is a question of law. Id. In determining the legal sufficiency of a motion to disqualify, the court asks "whether the facts alleged, which must be assumed to be true, would cause the movant to have a well-founded fear that he or she will not receive a fair trial at the hands of that judge." Id. (citing Fla. R. Jud. Admin. 2.330(d)(1)).
Initially, we hold that because Stein's motion was predicated solely upon the unexplained presence of an unsigned sentencing order in the State's file, it was legally insufficient. Hence, the trial judge did not err in initially denying the motion as legally insufficient. We conclude that the mere presence of a copy of an unsigned sentencing order in the State's file, without more, should not give rise to a well-founded fear that a defendant will not receive a fair trial at the hands of that judge. That was the only claim here. Cf. Rodriguez v. State, 919 So.2d 1252, 1276-77 (Fla.2005) (holding that postconviction judge was not required to disqualify himself where his testimony as to the physical description of missing documents, his recollection of how he handled the documents, and his efforts to locate them, was strictly informational and did not qualify him as a material witness). Accordingly, in Stein's case, the hearing in which Judge Wiggins testified was unnecessary.[4] Therefore, we hold that Judge Wiggins did not err in denying Stein's motion to disqualify.
We acknowledge that a judge should ordinarily recuse herself if she is going to be a material witness in the case. However, the sole allegation in this case was that there was an unsigned copy of a sentencing order in the State's file. The presence of such an order in itself is neither unusual nor indicative of any improper conduct by the trial court or counsel. Obviously, both parties, including the State, would ordinarily have a copy of the sentencing order. The fact that the order is unsigned is also, in and of itself, of little consequence. Copies of orders may be provided in many forms, and, while it is preferable that the copies provided conform with the date signed and the signature of the judge, the lack of a signature standing alone should give rise to no adverse inferences concerning the neutrality of the judge.

INEFFECTIVE ASSISTANCE OF COUNSEL
Next, Stein claims error in the denial of his claim of two distinct instances of ineffective assistance of counselone during *335 the guilt phase and the other during the penalty phase.
The same legal standard applies to both instances. Under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in order to establish a claim for ineffective assistance of counsel, we have stated that two requirements must be satisfied:
First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined. A court considering a claim of ineffectiveness of counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied.
Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986) (citations omitted). Because both prongs of the Strickland test present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the circuit court's factual findings that are supported by competent, substantial evidence, but reviewing the circuit court's legal conclusions de novo. See Sochor v. State, 883 So.2d 766, 771-72 (Fla. 2004).
There is a strong presumption that trial counsel's performance was not ineffective. See Strickland, 466 U.S. at 690, 104 S.Ct. 2052. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689, 104 S.Ct. 2052. The defendant carries the burden to "overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). "Judicial scrutiny of counsel's performance must be highly deferential." Id. In Occhicone v. State, 768 So.2d 1037 (Fla.2000), we explained that "strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." Id. at 1048.

1. GUILT PHASE
Stein argues that trial counsel was ineffective because he conceded guilt on the robbery charge during closing argument in an effort to obtain credibility for seeking a "jury pardon" despite the fact that the felony-murder rule could be utilized by the State based upon the concession of guilt to robbery. Stein now concedes that the only evidence before the trial court was that defense counsel explained this strategy to him and he consented to the strategy, but Stein maintains that his consent was meaningless because counsel erroneously portrayed the chance of a jury pardon as a legitimate strategy and possibility.
The postconviction court held an evidentiary hearing on this issue and the only witness called was defense counsel. Stein did not testify. At trial, counsel argued in closing:
Ladies and gentlemen, this is a gruesome case. Its not an easy case to sit and listen through this type of evidence and the main thing is to focus on what your decision should be and so, let's go to the verdict form. Let's take robbery first. There will be a check mark after the place for not guilty, or guilty and I *336 want you to check guilty on that because I think the evidence has shown beyond a reasonable doubt that he is guilty of robbery. The rest I think is subject to debate.
Defense counsel went on to argue that the codefendant Christmas was the shooter and the mastermind in the crimes, and that the jury should consider murder in the second and third degree and manslaughter as proper alternatives to first-degree murder for Stein.
At the postconviction hearing, counsel testified that because of the strong case presented by the State, and especially when Stein's confession was allowed in evidence, his strategy was to concede the robbery charge and argue for a lesser-included degree of homicide on the murder charge. In describing the strong evidence presented by the State of Stein's guilt, counsel stated, "Because of the confession to the robbery, armed robbery and all the other evidence in the case was so strong for him being there anyway and being part of the murder that I thought that that would be thehis best chance of not getting a death penalty."[5] Counsel also explained that in his view conceding the armed robbery charge would gain credibility for him with the jury during the guilt phase, which he hoped to carry over into the penalty phase. Counsel testified that he spoke to Stein about this strategy "many times during my jail conferences." When asked to describe how Stein indicated consent to the strategy, counsel stated, "I mean he said yes, you're right on several occasions.... Do you understand that we may have to take the argument of felony murder and try to get a jury pardon[?] Yes, I do." The alternative argument, counsel testified, was "[t]o basically stonewall the state and make them prove every single element of the crime." Counsel decided against this strategy:
Well, because I thought that that wouldthe jury pardon issue wouldI think would work better if I told the jury in this particular case under these set of facts that, yes, he confessed to the armed robbery. Yes, he was there but he did not shoot these people. That was the strategy and I thought that was the best strategy then and I still think it was today just because of the weight of the evidence.
When asked whether this strategy was not a concession that Stein could be convicted of felony-murder, counsel testified that the jury could do that, but he was "looking for a jury pardon which I thought I had to do under those circumstances."
First, we reject Stein's argument that the per se rule of ineffectiveness set out in United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), should be applied here. The United States Supreme Court has held that the proper standard to be applied in cases involving counsel's concession of guilt is the two-pronged test outlined in Strickland. Florida v. Nixon, 543 U.S. 175, 178, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004). Since Nixon, we have applied the Strickland standard in similar cases. See Harvey v. State, 946 So.2d 937, 940, 942 (Fla.2006).
In Stein's case, the postconviction court found that defense counsel conceded the armed robbery charge "with the Defendant's consent" and for sound strategic reasons to try to save the defendant's life *337 by claiming his codefendant was more culpable in the killings. The record provides substantial competent evidence to support this holding. See Blanco v. State, 702 So.2d 1250, 1252 (Fla.1997).
First, it is axiomatic that if a defendant consents to defense counsel's trial strategy after it had been explained to him, it will be difficult to establish a claim for ineffective assistance of counsel. Gamble v. State, 877 So.2d 706, 714 (Fla.2004) ("[I]f the defendant consents to counsel's strategy, there is no merit to a claim of ineffective assistance of counsel."); see Nixon v. Singletary, 758 So.2d 618, 623 (Fla.2000). Indeed, consent to counsel's trial strategy, even where that strategy is to concede guilt on one of the charges, is almost always fatal to an ineffective assistance of counsel claim. See, e.g., Philmore v. State, 937 So.2d 578, 587-88, (Fla.2006) (rejecting ineffective assistance of counsel claim where defendant consented to conceding guilt on conspiracy to commit robbery, carjacking, kidnapping, and robbery charges, and to the lesser-included offense of second-degree murder); Gamble, 877 So.2d at 715 (holding that where defendant consented to conceding guilt in felony-murder, defendant could not argue that his consent was invalid because he did not understand the consequences of his consent if the strategy did not result in an acquittal of first-degree murder).
Nevertheless, assuming Stein's consent is not dispositive, we find that Stein has also failed to establish that defense counsel's strategy constituted deficient performance under the circumstances faced by counsel. In Kormondy v. State, 983 So.2d 418 (Fla.2007), we addressed a similar claim and held:
[T]rial counsel's strategy of conceding guilt to robbery and burglary was a reasonable tactical decision. The record demonstrates that Kormondy had continually admitted his participation in the burglary and robbery. In fact, in the statement made to law enforcement officers, which was presented to the jury by the State, Kormondy admitted his involvement in both crimes. Thus, it would have been disingenuous for trial counsel to argue contrary to Kormondy's own admission of his participation in the burglary and robbery. Further, trial counsel's concession helped gain credibility with the jury by making a concession to the truth of Kormondy's participation in these noncapital offenses.
Id. at 431; see also Gamble, 877 So.2d at 713 (upholding counsel's decision to concede a lesser included offense of second- or third-degree murder in a first-degree murder case as a reasonable trial tactic where the defendant's confession to the underlying felony was admitted).[6] Similarly, we conclude that defense counsel's attempt here to impress the jury with his candor cannot be deemed to be outside the range of alternative defense strategies available to counsel in a case where proof of defendant's guilt of the underlying crime is strong or overwhelming. Counsel considered the alternative course of action, which was to make no concessions and simply demand that the State prove the robbery charge. However, in light of the fact that *338 the State's case was strong and unrebutted, and that Stein's confession to the robbery had been introduced, counsel made a strategic decision (with Stein's consent) to focus on the possibility of a jury pardon and on the penalty phase where he hoped to persuade the jury that Stein's life should be spared.
Under these circumstances, we hold that the trial judge did not err in concluding that counsel's decision was within the norms of reasonable professional conduct.

2. PENALTY PHASE INEFFECTIVENESS
Next, Stein argues that defense counsel was ineffective for failing to investigate and present additional mitigation evidence at the penalty phase.
At the penalty phase, the State first presented the testimony of Detective R. Carl Thorwart, Jr., who testified that he found a loaded .38 caliber revolver and .38 caliber ammunition on Stein when he arrested Stein. He further testified that after checking Stein's and Christmas's criminal records, he did not find any criminal history on Stein. Defense counsel then called two mitigation witnesses on behalf of Stein: (1) Sandra Griffin Bates, his sister; and (2) Christine Moss, his girlfriend at the time. Both witnesses testified about Stein's positive conduct and character traits and expressed the opinion that ending Stein's life would serve no useful purpose and spending life in prison would make Stein a better person.
At the postconviction evidentiary hearing, defense counsel testified that he spoke with Stein about possible mitigation and asked him for personal background information. Counsel testified that he identified Bates and Moss as mitigation witnesses through this process and prepared both to testify months in advance of the penalty phase. Counsel testified that he also hired an investigator to help locate witnesses who knew Stein. After speaking with the investigator, counsel concluded that none of the individuals identified would be helpful. Counsel was especially concerned that some friends of Stein's were aware of Stein's involvement with the racist "skinhead" movement. He was concerned that this involvement could come out during testimony and undermine his efforts to save Stein's life, especially since one of the murder victims was black. There were other friends of Stein's that the investigator could not locate. Further, although there was evidence of Stein being a drug user, counsel decided against use of this as mitigation because he believed juries may actually view drug use in a negative light. Counsel also retained Dr. Harry Krop, a mental health expert, who evaluated Stein's mental health and informed counsel he would not be able to provide anything helpful in mitigation. Counsel also reviewed a report from the Phoenix Institute of Technology indicating that Stein had graduated from the "Precision Powertrain & Chassis" automotive program.
Counsel testified that after all this investigation "the main thing I knew about [Stein] was all this evidence of him being a skinhead and it was hate crimes and all that." Counsel admitted that little about Stein's life was actually presented during the penalty phase. Neither he nor the investigator visited Phoenix, Stein's home town, and counsel conceded, "I'm sorry I did not go to where he was from personally and, you know, basically talk to everybody and see." In hindsight, counsel would go to Phoenix and "camp out there."
At the postconviction hearing Stein presented the testimony of six witnesses: (1) Sandra Griffin Bates, Stein's sister; (2) Donna Nolz, a friend from elementary school; (3) "Shandra" Elaine Johnson *339 Mann, Stein's ex-wife and mother of Stein's daughter; (4) Philip Douglas Bacha, a friend from elementary school; (5) Shari Roinestad, the mother of Stein's friend, Michael Roisenstad; and (6) Michael Roinestad, a friend. These witnesses testified to four areas of possible mitigation evidence: (i) Stein's disengaged adoptive parents who were in poor health; (ii) Stein's "marginalized" teenage years, including his substance abuse; (iii) an automobile accident in which a friend died and Stein sustained injuries; and (iv) the existence of Stein's child, whom Stein's ex-wife, Mann, gave up for adoption. Some of these witnesses also acknowledged Stein's racist views and involvement with the skinheads.
The trial court denied this claim, finding that defense counsel did conduct a reasonable investigation for mitigation, and that even if the new evidence of mitigation was considered, Stein had not established any prejudice by the failure to present such evidence.
"An attorney has a duty to conduct a reasonable investigation, including an investigation of the defendant's background, for possible mitigating evidence." Rose v. State, 675 So.2d 567, 571 (Fla.1996) (quoting Porter v. Singletary, 14 F.3d 554, 557 (11th Cir.1994)); see also State v. Lewis, 838 So.2d 1102, 1113 (Fla. 2002) ("[T]he obligation to investigate and prepare for the penalty portion of a capital case cannot be overstated  this is an integral part of a capital case."); Ragsdale v. State, 798 So.2d 713, 716 (Fla.2001). "The failure to do so `may render counsel's assistance ineffective.'" Rose, 675 So.2d at 571 (quoting Bolender v. Singletary, 16 F.3d 1547, 1557 (11th Cir.1994)). "The principal concern, as recognized by the United States Supreme Court, is not whether a case was made for mitigation but whether the `investigation supporting counsel's decision not to introduce mitigating evidence ... was itself reasonable `from counsel's perspective at the time the decision was made." Holland v. State, 916 So.2d 750, 757 (Fla.2005) (quoting Wiggins v. Smith, 539 U.S. 510, 523, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)).
Initially, we note that no testimony was presented by Stein at the evidentiary hearing as to how counsel would have become aware of the postconviction witnesses now identified by Stein or whether a reasonable investigation would have identified them. As the postconviction court stated, "no evidence or testimony was presented at the evidentiary hearing, or in the Defendant's Motions, that the Defendant ever informed counsel of the witnesses called at the evidentiary hearing."
However, even considering that these witnesses could have been identified by a diligent investigation, we find no error in the trial court's conclusion that counsel's actual performance did not fall outside a constitutionally accepted range of effective assistance. In this regard we agree with the Eleventh Circuit when it noted:
It is common practice for petitioners attacking their death sentences to submit affidavits from witnesses who say they could have supplied additional mitigating circumstance evidence, had they been called, or, if they were called, had they been asked the right questions.... That other witnesses could have been called or other testimony elicited usually proves at most the wholly unremarkable fact that with the luxury of time and the opportunity to focus resources on specific parts of a made record, post-conviction counsel will inevitably identify shortcomings in the performance of prior counsel. As we have noted before, "[i]n retrospect, one may always identify shortcomings," Cape v. Francis, 741 F.2d 1287, 1302 (11th Cir.1984), cert. *340 denied, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 245 (1985), but perfection is not the standard of effective assistance.
Waters v. Thomas, 46 F.3d 1506, 1513-14 (11th Cir.1995).
Counsel investigated the information Stein provided and reviewed the information he discovered from the work of his investigator and his own investigation, including having Stein's mental health evaluated. Furthermore, Stein provided little help to counsel. For example, counsel urged Stein to allow his adoptive parents as witnesses, but against his advice, both Stein and Stein's sister (Sandra Griffin Bates) refused, stating that their parents were in ill health and "just don't want anything to do with it."
There was no evidence presented during the evidentiary hearing that Stein came from a troubled home. To the contrary, there was testimony that Stein came from a loving family. Finally, the testimony supports the postconviction court's finding that "each of the witnesses testified that they knew [Stein] for only brief periods of time and had little to no contact with [Stein] for several years prior to his arrest." In essence, the trial court concluded that these witnesses offered little in the way of mitigation. Significantly, most of Stein's witnesses offered few favorable comments about Stein and could have caused substantial damage to his case on cross-examination. See Jones v. State, 928 So.2d 1178, 1185-86 (Fla.2006) (holding that there was no prejudice from failing to present the testimony of an expert where the expert could have damaged the defendant's chances for a life sentence); Breedlove v. State, 692 So.2d 874, 877 (Fla.1997) ("[P]resentation of each of these witnesses would have allowed cross-examination and rebuttal evidence that would have countered any value [the defendant] might have gained from the evidence."). Bacha and Michael and Shari Roinestad testified that Stein abused drugs, which the jury could have viewed in a negative light. Bacha and Michael testified that Stein had racist views and was associated with the skinhead movement. Michael and Mann testified that Stein was reckless in his general conduct. Mann testified that Stein had no respect for his adoptive parents' rules, and Michael testified that Stein was not a loving son.
Further, even assuming that counsel's investigation was deficient, Stein has failed to establish prejudice. "In assessing prejudice, we reweigh the evidence in aggravation against the totality of available mitigating evidence." Wiggins, 539 U.S. at 534, 123 S.Ct. 2527; see, e.g., Rutherford v. State, 727 So.2d 216, 222-26 (Fla.1998) (holding that where defendant presented two psychologists, who testified about defendant's posttraumatic stress and alcohol dependency, and lay testimony about defendant's abusive home and troubled relationship with his wife, it was not reasonably possible that this altered picture would have outweighed the multiple aggravators at issue (HAC, CCP, and robbery/pecuniary gain)); Breedlove, 692 So.2d at 878 (affirming denial of 3.850 relief where "the three aggravating factors we have previously affirmed [(prior violent felony, during course of burglary, and HAC)] overwhelm whatever mitigation the testimony of [the defendant's] friends and family members could provide"); Lusk v. State, 498 So.2d 902, 906 (Fla.1986) (holding that evidence of the defendant's troubled family background would not have affected death sentence in view of the aggravating factors affirmed on direct appeal). When comparing Stein's case to Rutherford, Lusk, and Breedlove, we find that Stein has failed to present substantial additional mitigation evidence that would likely have overcome the substantial four *341 aggravating factors we reviewed and approved on direct appeal.
Finally, we conclude that Stein's argument that Bates was not adequately prepared by counsel to give testimony is without merit. The postconviction court found that defense counsel "contacted Ms. Bates several months in advance and spoke with her several times on the phone to prepare her for the penalty phase." This finding is supported by substantial competent evidence as Morrow testified that he prepared Bates months in advance.

NEWLY DISCOVERED EVIDENCE
In his final claim, Stein argues that the trial court erred in denying his claim that the life sentence of codefendant Marc Christmas's case is newly discovered evidence that, if properly considered, would have produced a life sentence in Stein's case.
We have enunciated the following framework for claims of newly discovered evidence related to a codefendant's life sentence:
For evidence to be considered newly discovered and sufficient to set aside a conviction, two requirements must be met:
First, in order to be considered newly discovered, the evidence "must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known [of it] by the use of diligence."
Second, the newly discovered evidence must be of such a nature that it would probably produce an acquittal on retrial.
... Specifically, for a defendant to succeed on a claim that a death sentence must be set aside because of a codefendant's subsequent life sentence the defendant must show: "1) the life sentence could not have been known to the parties by the use of due diligence at the time of trial; and 2) the codefendant's life sentence would probably result in a life sentence for the defendant on retrial."
Ventura v. State, 794 So.2d 553, 570-71 (Fla.2001) (citations omitted) (quoting Jones v. State, 709 So.2d 512, 521 (Fla. 1998) and Groover v. State, 703 So.2d 1035, 1037 (Fla.1997)). "When a codefendant... is equally as culpable or more culpable than the defendant, disparate treatment of the codefendant may render the defendant's punishment disproportionate." Larzelere v. State, 676 So.2d 394, 406 (Fla. 1996). "However, `[w]here the circumstances indicate that the defendant is more culpable than a codefendant, disparate treatment is not impermissible despite the fact that the codefendant received a lighter sentence for his participation in the same crime.'" Marquard v. State, 850 So.2d 417, 423 (Fla.2002) (quoting Brown v. State, 721 So.2d 274, 282 (Fla.1998)).
Although not always the case, we acknowledge we have sometimes characterized the "triggermen" to be the more culpable of codefendants. See, e.g., Ventura, 794 So.2d at 571; Foster v. State, 778 So.2d 906, 922 (Fla.2000); Groover v. State, 703 So.2d 1035, 1037 (Fla.1997). However, the triggerman has not been found to be the more culpable where the non-triggerman codefendant is "the dominating force" behind the murder. See Larzelere, 676 So.2d at 407 (finding death sentence for non-triggerman defendant proportional despite triggerman's life sentence because non-triggerman defendant planned, instigated, and was the "mastermind" behind the murder).
In this instance, however, Stein has not established that his codefendant Christmas was the dominating force. Indeed, we *342 held on direct appeal that "no evidence was presented to support a finding that Stein merely acted as an accomplice ... [and] that his participation was relatively minor." Stein, 632 So.2d at 1366. Further, because we find substantial evidence that Stein was the triggerman in this case we agree with the trial court that the newly discovered evidence of his codefendant's life sentence would not entitle Stein to a life sentence. See Blake v. State, 972 So.2d 839, 849 (Fla.2007) ("We have rejected relative culpability arguments where the defendant sentenced to death was the `triggerman.'"), cert. denied, ___ U.S. ___, 128 S.Ct. 2442, 171 L.Ed.2d 242 (2008). We conclude that Stein has failed to establish his claim of less culpability because the record in fact reflects the existence of substantial evidence that he was the more culpable one in the murders. In the Christmas sentencing order, the trial court found that Stein shot the victims while Christmas held a .38-caliber revolver on them. In the Stein sentencing order, which we cited in our initial reviews of Stein's sentence, the sentencing court found that "[t]here was strong evidence indicating that Steven Edward Stein did kill or did attempt to kill Dennis Saunders and Bobby Hood." In support of that finding, the trial court stated, "The murder weapon, a rifle, belonged to Stein. Stein and Stein alone was seen carrying the rifle before the robbery-murders. At the time Stein was arrested, the box that the rifle came in was in Stein's room." Thus, the record reflects strong evidence that Stein was the triggerman.
Accordingly, for all the reasons set out above, the trial court's decision denying relief is affirmed.
It is so ordered.
WELLS, LEWIS, and BELL, JJ., and CANTERO, Senior Justice, concur.
QUINCE, C.J., dissents with an opinion, in which ANSTEAD and PARIENTE, JJ., concur.
ANSTEAD, J., dissents with an opinion, in which QUINCE, C.J., and PARIENTE, J., concur.
QUINCE, C.J., dissenting.
I cannot agree with the majority's decision that because the hearing on the issue of the preparation of the sentencing order was not necessary, the trial judge who testified at that hearing was free to resume his role as the judge on this case. Even if the motion could have been or should have been denied as legally insufficient, the fact is that the motion was granted to the extent that a hearing was to be conducted on the underlying issue who drafted the trial judge's sentencing order. Once the decision was made to have a hearing and to have the original trial judge as a witness, that trial judge should have been barred from any further proceedings on the case in a capacity other than as a witness. It is my view that a trial judge cannot be a witness against the defendant and make other "impartial" rulings in the defendant's case in chief.
Once the trial judge testified in the hearing concerning the preparation of the sentencing order, he should have disqualified himself from further proceedings because at that point his impartiality might reasonably be questioned. See Canon 3(E)(1), Fla.Code Jud. Conduct.[7] In making the argument about the unsigned sentencing order that was in the prosecutor's possession, the defendant is in essence at least questioning whether the judge allowed the prosecutor to write the sentencing *343 order, a matter that is contrary to the requirements of the law. In other words, the defendant is calling into question the legality of the actions of the trial judge. When the trial judge allowed the matter to proceed to a hearing, it seems clear to me that there then existed an adversarial relationship between the judge and the defendant.
In such situations, the appearance of impartiality is as important as actual impartiality. Both Canon 3(E)(1) and Florida case law indicate that the appearance of impartiality is as detrimental to legal proceedings as the judge's actual impartiality. See Livingston v. State, 441 So.2d 1083, 1086 (Fla.1983) (finding that the neutrality of judges is a grave concern even as to perception); Aetna Life & Cas. Co. v. Thorn, 319 So.2d 82 (Fla. 3d DCA 1975) ("A judge occupies such a particular position in the affairs of other men that not only must he be free of evil intent but he must also avoid the appearance of evil."); Anderson v. State, 287 So.2d 322 (Fla. 1st DCA 1973) ("A judge must not only be impartial, but he should leave the impression of his impartiality upon all who attend court.... The appearance of and absolute impartiality is [sic] essential. There must be no taint of any lack of objectiveness in all acts of a judge."); see also Fuster-Escalona v. Wisotsky, 781 So.2d 1063 (Fla. 2000) (opining that a judge may not sit in an action where her or his neutrality is questioned or shadowed).
In this case, Judge Wiggins' neutrality or impartiality at Stein's evidentiary hearing on the other allegations in his postconviction motion might reasonably be questioned because of his participation in a portion of the hearing as a witness, whether material or otherwise. Judge Wiggins testified on the issue of whether he had improperly delegated authority to the State to draft the sentencing order. He then determined that he was able to preside over additional claims in the same proceeding made by the same defendant who had, in essence, accused him of improper conduct. I believe that once Judge Wiggins testified in these proceedings, he no longer enjoyed the appearance of an impartial arbiter, and, thus, he should have disqualified himself from the remainder of Stein's evidentiary hearing.
Once the trial judge granted the motion to disqualify to the extent of having an evidentiary hearing on the preparation of the sentencing order and once the trial judge was called as a witness, the trial judge should not have heard the other issues raised in Stein's 3.851 motion. Under these circumstances, the trial judge should have recused himself. Therefore, I would vacate the trial judge's denial of postconviction relief and remand for a new evidentiary hearing before a new trial judge.
ANSTEAD and PARIENTE, JJ., concur.
ANSTEAD, J., dissenting.
I concur in the dissent of Chief Justice Quince. I do not believe we should embrace a concept of partial or temporary recusal in a case. This is much too fine a line to draw. While an after-the-fact view demonstrates without question that the trial judge acted entirely properly in the drafting of the order in question, the record also demonstrates the good faith of defense counsel in raising an issue that has troubled this Court for some time, i.e., the possible delegation to the State of drafting an order sentencing a defendant to death.[8] It is difficult to conclude here that the trial *344 judge should not have recused himself after testifying on the merits of defendant's postconviction claim challenging the drafting of the sentencing order.
This Court has often emphasized our concern with the appearance of partiality. See Rogers v. State, 630 So.2d 513, 515 (Fla. 1994). In Rogers, this Court held that regardless of the legal sufficiency of a motion to disqualify, a new hearing should be granted before a different judge where there is an appearance of bias. Further, Florida's Code of Judicial Conduct, Canon 3(E)(1), requires that a "judge disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned." This requirement imposes a continuing duty, and a party need not even move under the Canon to trigger its operation. See Aetna Life & Casualty Co. v. Thorn, 319 So.2d 82, 84 (Fla. 3d DCA 1975) ("The burden is upon the individual judge to determine his qualification to sit on a particular case."). This duty would seem heightened here after the trial judge actually testified in the postconviction hearing to rebut the defendant's claim as to the drafting of the sentencing order. Under the Canon, it matters not whether Stein filed a motion to disqualify on this basis after the hearing because the focus of 3(E)(1) is on a judge's duty.
Under Canon 3(E)(1), this Court must address two issues. First, this Court must define "proceeding" or "cause" within these rules. This question is important because the State alleges that the proceeding or cause in which the judge testified is limited to the hearing that the chief judge presided over and does not include the subsequent proceedings where the trial judge presided over the remainder of Stein's claims. Second, this Court must determine whether the standard rule under Canon 3(E)(1) ("the judge's impartiality might reasonably be questioned") required the trial judge to disqualify himself after testifying against the defendant's claim.
As to the first question, it is difficult to conclude, as the State does, that the rule contemplates that each of the issues raised in a motion with more than one issue is a separate "cause" or different "proceeding." The State does not cite any cases in support of this proposition, nor does independent research discover any. Black's Law Dictionary 235 (8th ed.2004), defines "cause" as a "lawsuit; a case." Furthermore, rule 2.330(d)(2) speaks of the "cause" in terms of the entire case pending before the judge. See Fla. R. Jud. Admin. 2.330(d)(2) ("the judge before whom the case is pending ... is a material witness... to the cause").
As to the second question, Stein relies especially on the Georgia Supreme Court's decision in Lewis v. State, 275 Ga. 194, 565 S.E.2d 437 (2002). In Lewis, a hearing was held after the defendant filed a motion for a new trial alleging that the trial judge had responded to notes sent by the jury during deliberations without notifying defense counsel. Id. at 438. During the hearing, the defendant filed a motion to disqualify the judge because he believed that the judge might need to testify as a witness to the purported jury communications. Id. The judge recused himself for the limited purpose of deciding the issue and the case was reassigned. Id. The judge testified during the hearing. Id. Nevertheless, the judge that was reassigned to the case held that (1) there were no improper communications with the jury, and (2) the trial judge was not required to recuse himself. Id. The case was then returned to the trial judge to resolve the remaining issues in the motion for new trial. Id. The Georgia Supreme Court reversed, holding:

*345 "[I]t is elementary that one may not be a witness and a judge in the same proceeding." Although the judge in this case tried to partition the issues on which she was disqualified from the issues on which she did not testify, all these issues arose in the same motion for new trial proceeding. The appearance of impropriety cannot be eliminated merely by addressing these issues in a piecemeal fashion. Simply stated, if a judge testifies as a material witness with regard to an issue in a case, the remainder of the case must be heard by another judge. Accordingly, the trial court in this case erred by denying Lewis motions for recusal and disqualification.
Id. at 438-39 (footnotes omitted) (quoting Russell v. State, 236 Ga.App. 645, 512 S.E.2d 913, 918 (1999)). Thus, Lewis is instructive in Stein's case because Georgia's Code of Judicial Conduct, Canon 3(E), is almost identical to Florida's Code of Judicial Conduct, Canon 3(E)(1). Similarly, in Roberts v. State, 840 So.2d 962, 969 (Fla.2002), this Court held that where the defendant was entitled to depose the trial judge on issues relating to ex parte communications, the trial judge was thereafter precluded from presiding over the defendant's remaining postconviction claims.
The State makes two additional arguments that should be addressed. First, the State argues that the "rule of necessity should allow the original judge to preside over the post-conviction proceedings." The commentary to Canon 3(E)(1) states:
[T]he rule of necessity may override the rule of disqualification. For example, a judge might be required to participate in judicial review of a judicial salary statute, or might be the only judge available in a matter requiring immediate judicial action, such as a hearing on probable cause or a temporary restraining order.
(Emphasis added.) As the commentary suggests, the "rule of necessity" is only applicable where there is no other judge available. That was obviously not the case here, where the circuit's chief judge was able to preside over one of Stein's claims and numerous other trial judges were available to hear the case.
Second, the State argues that if this Court holds that the trial judge is disqualified, then any defendant can remove the original trial judge by merely raising a frivolous claim, such as a Patterson claim, where the original trial judge's conduct is at issue. The State does not establish, however, how Stein's sentencing order claim was frivolous. If Stein had alleged that an unsigned sentencing order was discovered in the State's file where no such document was ever discovered, then the State could argue frivolity. Such circumstances are not present in Stein's case.

CONCLUSION
It seems apparent that a reasonably prudent person in Stein's position would fear that the trial judge would not be impartial after the judge was called as a witness to oppose one of the defendant's postconviction claims and the judge gave testimony going to the merits of the claim. See Fla.Code Jud. Conduct, Canon 3(E)(1). Here, as in Lewis and Roberts, this Court should hold that Canon 3(E)(1) required the trial judge to disqualify himself sua sponte because his impartiality might reasonably be questioned after he testified on the merits to one of Stein's claims in his postconviction motion.[9]
*346 In Stein's case, the trial judge testified to an actual issue explicitly raised in Stein's postconviction motion, i.e., whether the trial judge directed the State to draft the sentencing order. Hence, the appearance of impropriety could be seen as greater here than in Rodriguez v. State, 919 So.2d 1252 (Fla.2005), where the trial judge's testimony in the public records hearing did not relate to any claim in the defendant's postconviction motion. Rodriguez, 919 So.2d at 1276. Furthermore, in Stein's case, the trial judge never "stepped aside" after testifying on the sentencing order claim, whereas the trial judge in Rodriguez did step aside after testifying in the sentencing order claim.
QUINCE, C.J., and PARIENTE, J., concur.
NOTES
[1] Stein argued that the trial court: (1) erred in denying his motion to suppress the statements made to investigators; (2) erred in allowing a suppression hearing to proceed in the absence of Stein's counsel; (3) erred in failing to declare a mistrial after two witnesses made certain statements about Stein's character; (4) failed to find in mitigation that Christmas, rather than Stein, was the primary actor in the crimes at issue and that Stein was of good character; (5) erroneously found the aggravating circumstance of a previous conviction for a violent felony; (6) erroneously found both that the murders were committed to avoid arrest and that the murders were cold, calculated, and premeditated; (7) erred in finding that the murders were heinous, atrocious, or cruel; (8) erroneously admitted testimony during the penalty phase that Stein was carrying a concealed weapon at the time of his arrest and that the carrying of that weapon was a felony offense; and (9) erred in denying Stein's request for a mistrial after the prosecutor made certain statements to the jury in his closing argument. Stein, 632 So.2d at 1364-67.
[2] Stein sought to determine whether the unsigned order's presence in the prosecutor's file meant that the prosecutor had drafted the order. See Patterson v. State, 513 So.2d 1257, 1261 (Fla.1987) (admonishing against the practice by judges of delegating the drafting of a death sentencing order to the State).
[3] Stein filed a motion for reconsideration on November 20, 2002, asking the court to declare its October 30, 2002, order nonfinal so that Stein could postpone appeal until the court resolved all claims in the postconviction motion. It was denied on December 4, 2002. That same day, Stein filed a notice to appeal Chief Judge Moran's decision. On January 17, 2003, however, Stein moved this Court to hold his appeal in abeyance or, alternatively, to dismiss the pending appeal without prejudice. We granted dismissal on March 6, 2003.
[4] In this case, as in Rodriguez, the presence of the sentencing order could have been resolved through the internal administrative procedures of the court. For instance, it would not have been inappropriate for Judge Wiggins to have explained to the parties the procedure he follows in preparing and providing copies of sentencing orders to the parties. Indeed, the parties are entitled to know the court's practice, and that, in essence, is exactly what Judge Wiggins testified to at the hearing. Describing those procedures, Judge Wiggins testified that he never signs more than one sentencing order. After signing that one order, there is one of two procedures he follows: he would either inform the attorneys that they could pick up a copy from his judicial assistant, or he or the clerk would give copies to the attorneys after sentence is imposed. A judge testifying to those procedural matters would not qualify him as a material witness in the case and need not disqualify him.
[5] The record reflects that in pretrial litigation, Stein unsuccessfully attempted to suppress statements he made wherein "Stein told the investigators that he and Christmas took approximately $900 in the robbery and that the victims were shot because the robbery `went bad.'" Stein, 632 So.2d at 1364. We affirmed the proper admission of those statements on direct appeal. Id. at 1364-65.
[6] In determining whether conceding guilt is a reasonable trial strategy in order to save the defendant's life, the United States Supreme Court has stated,

Counsel therefore may reasonably decide to focus on the trial's penalty phase, at which time counsel's mission is to persuade the trier that his client's life should be spared.... In this light, counsel cannot be deemed ineffective for attempting to impress the jury with his candor and his unwillingness to engage in "a useless charade."
Nixon, 543 U.S. at 191-92, 125 S.Ct. 551.
[7] Canon 3(E)(1) provides in pertinent part: "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned."
[8] Patterson v. State, 513 So.2d 1257 (Fla. 1987) (admonishing against the practice by judges of delegating the drafting of a death sentencing order to the State).
[9] The State cites School Board of Indian River County v. Livaudais, 720 So.2d 1175 (Fla. 4th DCA 1998), for the proposition that it was not improper for the trial judge to continue presiding over the case. In Livaudais, the trial judge stepped aside throughout the entire trial because of a relationship with a witness. Id. at 1175. After trial, a motion for attorney's fees was set before the judge that stepped aside. Id. The Fourth District held that it was not improper for the judge to preside over the attorney's fees stating, "Since the case was tried before a different judge, and there was no exposure of the first judge to the witness, the reason for recusal has been removed." Id. In Stein's case, the reason for the motion to disqualify, that the trial judge would be a witness, was not removed. In fact, the trial judge did testify. Thus, Livaudais is not instructive.