MARSTILLER, J.
Eduardo Hernandez appeals his convictions and sentences for using a computer online service to solicit a person believed to be a child to engage in unlawful sexual conduct, and for traveling to engage in unlawful sexual conduct with a child after committing the above-described solicitation. As grounds for reversal, Hernandez asserts that the trial court erred by denying his motion for judgment of acquittal because the State put on insufficient evidence to prove solicitation, and by denying his facially sufficient motion to disqualify the trial judge establishing a reasonable fear the judge would not sentence him fairly. We affirm.

I. Motion for Judgment of Acquittal

The State charged Hernandez with violating the following laws:
(3) CERTAIN USES OF COMPUTER SERVICES OR DEVICES PROHIBITED. — Any person who knowingly uses a computer online service, Internet service, local bulletin board service, or any other device capable of electronic data storage or transmission to:
(a) Seduce, solicit, lure, or entice, or attempt to seduce, solicit, lure, or entice, a child or another person believed by the person to be a child, to commit any illegal act described in chapter 794, chapter 800, or chapter 827, or to otherwise engage in any unlawful sexual conduct with a child or with another person believed by the person to be a child ...
[[Image here]]
commits a felony of the third degree[.]
[[Image here]]
(4) TRAVELING TO MEET A MINOR. — Any person who travels any distance either within this state, to this state, or from this state by any means, who attempts to do so, or who causes another to do so or to attempt to do so for the purpose of engaging in any illegal act described in chapter 794, chapter 800, or chapter 827, or to otherwise engage in other unlawful sexual conduct with a child or with another person believed by the person to be a child after using a computer online service, Internet service, local bulletin board service, or any other device capable of electronic data storage or transmission to:
(a) Seduce, solicit, lure, or entice, or attempt to seduce, solicit, lure, or entice, a child or another person believed by the person to be a child, to engage in any illegal act described in chapter 794, chapter 800, or chapter 827, or to otherwise engage in any unlawful sexual conduct with a child ...
*354 [[Image here]]
commits a felony of the second degree[.]
§ 847.0135(3)(a), (4)(a), Fla. Stat. (2011).
At his trial, the State put on evidence that, as part of a sting operation, Tallahassee Police Officer Laura Gereg placed an advertisement on the Internet site www. craigslist.org (“craigslist”), in the “casual encounters” section, with the tagline “Butterfly 4 Release — w4m (Tallahassee, FL).” The body of the ad read, “Wantn [sic] somel to capture & release 2 the wild. U got what it takes... only talented apply.” Hernandez responded to the ad, and the following email conversation ensued between him and the undercover officer:
HERNANDEZ: Hi. i’m eddy, let me know if ur bored.
OFFICER GEREG: hey eddy....i m bored, lookn 4 fun down wit an yunger girl?
HERNANDEZ: Yeah for sure. I can dig it. what are u up to
OFFICER GEREG: well i m almost 15 chilln.. .lookn to get out u cool wit dat? lets tlk
HERNANDEZ: Yea I suppose, would you be discreet?
OFFICER GEREG: r u kiddn me hell yes i would b....would get my ass kicked if anyl found out
HERNANDEZ: well what are you doing. we can meet and maybe try and see if this can work. I’d like it to
OFFICER GEREG: i would too but what we gonna do? i could sneak out in about an hr or so.
HERNANDEZ: yea i can give you my number. I have a car. I can pick you up. i guess let me know where to go
OFFICER GEREG: i will let u know but what we gonna do? need a reason to risk gettn my ass kicked by my rents LOL
HERNANDEZ: [redacted] We could fool around and if you like it we can do more perhaps. Maybe do this more often [redacted] idk what else would you want to try
OFFICER GEREG: [redacted] fool around like how? if i m sneakn out I wanna know wat 2 b ready 4... so I can get ready
HERNANDEZ: well if i like you and you like me i’ll fuck you. if you want to try other things we can fuck as long as you’re able to be out. i’m open to anything i think
OFFICER GEREG: i m down wit dat... long as u bring protection not on the pill... .yet... .when u wanna do this?
HERNANDEZ: yea of course, how about 12:30ish.
OFFICER GEREG: I cud prob do that... .the rents r headn 2 bed now they should b sound asleep by then... u anywhere near trille rd?
HERNANDEZ: yea. real close, im over by park
OFFICER GEREG: lets plan on that? 1230 at circle k on shamrock cool? HERNANDEZ: sounds good, looking forward to it babe
OFFICER GEREG: me too... how will i know its u, got a pic or who m i lookn 4?
HERNANDEZ: I’ll be in a blueish toy-oya [sic] minivan. I’ll be wearing a salmon colored Ralph lauren t. I have black hair, no pics that i have on my desktop i dont think
HERNANDEZ: what about you. what outfit should i be looking for
OFFICER GEREG: Ok, i m in jeans, flip flops, got brn hair and prolly gonna throw on my bik jacket
HERNANDEZ: hott. sounds good
*355 OFFICER GEREG: k baby.... a lil nervous... u aint a creeper r u?
HERNANDEZ: I’m nervous too. Not a creeper, i just love play
OFFICER GEREG: play? good tthing u aint
HERNANDEZ: play just refers to sex. i’m heading out now.
OFFICER GEREG: alright babe... .i will sneak out at about 1225 and should b there by 1230.
Hernandez argues that nothing he said in the email exchange constituted solicitation. He contends he merely stated what he was going to do, which, under Randall v. State, 919 So.2d 695 (Fla. 4th DCA 2006), does not amount to solicitation as a matter of law. The defendant in Randall was charged with soliciting a minor to commit a lewd or lascivious act. See § 800.04(6), Fla. Stat. (2003). At trial, the victim testified that the two had taken a walk during which they did not converse, but that upon reaching an overpass and sitting on the ground, the defendant told her he “wanted” to lick her vagina, while touching her. Randall, 919 So.2d at 695-96. The appellate court held that the defendant’s statement did not constitute an act of solicitation. Id. at 697.
The facts are significantly different here. Hernandez and the undercover officer engaged in a lengthy email conversation during which, as the above-quoted exchange shows, Hernandez endeavored to convince the person he believed to be a 14-year-old girl to sneak away from home and meet him to have sex. This he did by first suggesting they could “fool around and if you like it we can do more perhaps.” Then, when the girl seemed to doubt it was worth the risk of getting in trouble with her parents, Hernandez said he would have sex with her for “as long as you’re able to be out,” and, importantly, he agreed to bring “protection” with him. Considering these statements and all the evidence de novo, in the light most favorable to the State,[1] we conclude Hernandez’s statements, under the circumstances present here, were sufficient for the jury to find he solicited a person believed to be a minor to engage in unlawful sexual conduct. Cf. State v. Murphy, 124 So.3d 323 (Fla. 1st DCA 2013), (affirming conviction for using online service to solicit person believed to be the parent of a child to consent to the child’s participation in unlawful sexual conduct, where defendant’s statements were intended to allay father’s concerns and thereby obtain consent). Accordingly, we affirm the trial court’s denial of Hernandez’s motion for judgment of acquittal.

II. Motion to Disqualify

Pretrial, Hernandez moved to disqualify the trial judge based on statements the judge made when sentencing two individuals in earlier cases that had arisen from the same online sting operation that ensnared Hernandez. The other defendants were adjudicated guilty of the same two crimes with which the State charged Hernandez. The motion averred, in pertinent part:
4. During the sentencing hearing of Mr. Cantrell [who had been convicted by a jury], his defense counsel urged Judge Hankinson to impose a downward departure sentence from the Criminal Punishment Code lowest permissible sentence of 42 months. After hearing the testimony of witnesses and argument of counsel, Judge Hankinson held that Mr. Cantrell’s case was “not outside the mainstream” for these offenses and that he would not exercise his discretion to *356 go below the lowest permissible sentence of 42 months.
5. Mr. Chavez [who entered an open plea] was sentenced immediately after Mr. Cantrell. Again, his counsel argued that Mr. Chavez should be sentenced below the lowest permissible sentence of 42 months. As with Mr. Cantrell, Judge Hankinson ruled that he would not depart from the 42 month sentence. In addition, Judge Hankinson stated he “is trying to be consistent” in the sentences he imposes for these offenses. Judge Hankinson also stated that based upon the cases he has seen charging these offenses he had no doubt a jury would have convicted Mr. Chavez if he had gone to trial. Further, Judge Hankin-son stated he saw no reason to depart from the sentence of 42 months because he “has to protect the public” against persons charged with these offenses.
[[Image here]]
9. A judge’s public pronouncement indicating the judge’s own sentencing preferences could be interpreted as a fixed intention and thus establish a reasonable fear on the part of the defendant that the judge has a bias in refusing to consider a sentencing option that is among the range of sentencing options available to him[.] ...
Under Florida Rule of Judicial Administration 2.330(f), a judge to whom an initial motion to disqualify is directed determines only whether the motion is legally sufficient, and not whether the facts alleged are true. If the motion sets forth facts that would create an objectively reasonable fear of not receiving a fair and impartial trial, it is legally sufficient, and the judge must grant it. See § 38.10, Fla. Stat.; Gregory v. State, 118 So.3d 770, 778 (Fla.2013).
The trial judge presiding in Hernandez’s case denied the motion to disqualify.[2] Hernandez contends the judge’s statements evince a fixed sentencing policy, leading him reasonably to fear the judge would not consider a downward departure sentence in any circumstance. We disagree. According to Hernandez’s motion, the defendants in the two other cases sought downward departure from the lowest permissible scoresheet sentence. See §§ 921.0024(2), 921.0026, Fla. Stat. (2011). One defendant presented witness testimony in an attempt to establish mitigating circumstances;[3] the other defendant, it appears, argued for leniency because he had pled to the offenses instead of going to trial. The judge’s statements, as recounted and quoted in the motion, indicate that neither defendant presented sufficient grounds to justify mitigating their sentences. Neither the desire to be consistent in sentencing, nor the desire to protect the public, reasonably imply an unwillingness to consider-or a fixed policy against — departing downwardly from the scoresheet minimum when sentencing defendants convicted of crimes similar to those committed by Hernandez. Cf. Martin v. State, 804 So.2d 360, 364 (Fla. 4th DCA 2001) (granting petition for writ of prohibition because judge’s statement in interview that incarceration should always be followed by probation could reasonably be interpreted as announcing fixed intention to invariably impose probation with jail or prison sentence). On the contrary, it appears from the motion that the judge would consider a downward departure if there were mitigating circumstances in a given case set *357 ting it apart from the “mainstream.” For these reasons, we conclude the facts alleged in Hernandez’s motion failed to create an objectively reasonable fear the trial judge would not be fair and impartial. The motion therefore was facially insufficient, and we affirm the order denying it.
Based on the foregoing, Hernandez’s convictions and sentences are AFFIRMED.
LEWIS, C.J., and OSTERHAUS, J., concur.

. See Johnston v. State, 863 So.2d 271, 283 (Fla.2003).

. We review the motion de novo for legal sufficiency. See Stein v. State, 995 So.2d 329, 334 (Fla.2008).

. The record before us provides no illumination on what those circumstances were.